**SUN–TIMES MEDIA GROUP, INC.,**
**f/k/a Hollinger International Inc., a**
**Delaware corporation, Plaintiff,**

v.

**Conrad M. BLACK, John A. Boultbee,**
**Peter Y. Atkinson, and Mark S.**
**Kipnis, Defendants.**

**C.A. No. 3518–VCS.**

Court of Chancery of Delaware.

Submitted: May 23, 2008.
Decided: July 30, 2008.

See also 844 A.2d 1022; 872 A.2d 559.

382

David C. McBride, Esquire, William D. Johnston, Esquire, Michael W. McDermott, Esquire, Kristen Salvatore DePalma, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Daniel J. Kramer, Esquire, Robert N. Kravitz, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, Attorneys for Plaintiff.

David A. Jenkins, Esquire, Joelle E. Polesky, Esquire, Smith Katzenstein & Furlow LLP, Wilmington, Delaware, Attorneys for Defendant Conrad M. Black.

David S. Eagle, Esquire, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Wilmington, Delaware, Attorney for Defendant John A. Boultbee.

J. Travis Laster, Esquire, John M. Seaman, Esquire, Abrams & Laster LLP, Wilmington, Delaware, Attorneys for Defendant Peter Y. Atkinson.

Gregory V. Varallo, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Attorney for Defendant Mark S. Kipnis.

## OPINION

STRINE, Vice Chancellor.

### I. *Introduction*

Plaintiff Sun–Times Mirror Group, formerly known as Hollinger International Inc.,[1] brought this action seeking to foreclose its obligation to provide advancement to defendants Conrad M. Black, John A. Boultbee, Peter Y. Atkinson, and Mark S. Kipnis. The crux of this dispute is the meaning of the words "the final disposition of such action, suit or proceeding" in the Sun–Times bylaws and § 145(e) of the Delaware General Corporation Law (the "DGCL"). Those words describe the point after which the Sun–Times is no longer obliged to continue advancing fees and expenses to the defendants under the advancement provision in its bylaws. The Sun–Times argues that the final disposition of a criminal proceeding occurs at the time of sentencing at the trial court level. The defendants argue that the final disposition of a proceeding[2] does not occur until the final, non-appealable conclusion to that proceeding. After considering the language of the bylaws and § 145, the parties' course of performance under the Sun–Times bylaws, and the practical and policy considerations related to the definition of that language, I conclude that the final disposition of a proceeding in this context is the final, non-appealable conclusion to that proceeding.

### II. *Factual Background*

#### A. *The Relevant History Behind This Case*

The defendants are former officers of Hollinger, a newspaper publishing company. Black is the former CEO and Chairman of the Board of Directors, Boultbee and Atkinson are former Executive Vice Presidents, and Kipnis is a former Vice President, Corporate Counsel, and Secretary. Black was also the ultimate controlling stockholder of Hollinger through a complicated corporate structure. This dispute is part of the fallout from Black's

1. In this opinion, I refer to the Sun–Times using its former name, Hollinger, where using that name is appropriate.

2. Consistent with the Sun–Times Certificate of Incorporation, I refer to an "action, suit or proceeding" as simply a "proceeding" at various points in this opinion. *See* Compl. Ex. O ("Sun–Times Certificate") Art. IX (b).

alleged schemes to enrich himself, and to a lesser extent others, including defendants Boultbee and Atkinson, at the expense of Hollinger. Among other alleged tactics of self-enrichment used by the defendants, the misuse of non-competition agreements came to assume great importance in the prosecution of the defendants by the U.S. government. Payments under those non-competition agreements were made to Black and certain other individuals, allegedly in circumstances when it was ridiculous to think that Black and his confreres would compete and allegedly without proper disclosure of the non-competition agreements to the full Hollinger board. Kipnis, as Hollinger's general counsel, played a role in Black's schemes by preparing the paperwork necessary to effect those schemes.

In a prior decision in which the non-competition payments were not center stage, this court found that Black had "breached his fiduciary and contractual duties [to Hollinger] persistently and seriously."[3] That decision resulted from the earliest of the many lawsuits that eventually resulted from the same underlying events.

But the defendants were not lucky enough simply to face several civil suits; the government soon got in the game and asserted criminal charges. On August 18, 2005, the defendants in this action were named as the defendants in a criminal proceeding in the U.S. District Court for the District of Northern Illinois. The defendants were charged in a seventeen count indictment with the following of-fenses: (1) mail and wire fraud, including the deprivation of the intangible right to honest services; (2) money laundering; (3) obstruction of justice; (4) racketeering; and (5) criminal tax violations.[4] The non-competition payments were a major focus of many of these charges.

After a four-month jury trial in 2007, each of the defendants was convicted on three counts relating to non-competition payments that violated the federal mail fraud statutes.[5] Kipnis was granted acquittal on one of those counts as the result of a post-trial motion for judgment of acquittal.[6] In addition to the federal mail fraud convictions, Black alone was convicted of obstruction of justice.[7] In summary, Black was convicted on four of thirteen counts, Boultbee on three of eleven, Atkinson on three of seven, and Kipnis on two of eleven.[8] As a result of those convictions, on December 10, 2007, Judge Amy St. Eve sentenced Black to 78 months in prison, Boultbee to 27 months in prison, Atkinson to 24 months in prison, and Kipnis to five years of probation with six months of home detention.[9]

The defendants appealed their convictions to the U.S. Court of Appeals for the Seventh Circuit. After the defendants were sentenced on December 10, 2007 but before the complaint in this action was filed on February 1, 2008, the Sun–Times informed the defendants that it would stop advancing their fees related to their appeals and any post-conviction proceedings at the trial court level. The Sun–Times' desire to stop paying advancement to the defendants was understandable—the Sun–

---

**3.** *Hollinger Int'l, Inc. v. Black,* 844 A.2d 1022, 1030 (Del.Ch.2004).

**4.** *United States v. Black,* 2007 WL 3254452, at *2 (N.D.Ill. Nov. 5, 2007).

**5.** *Id.* at *3.

**6.** *Id.* at *11.

**7.** *Id.* at *3.

**8.** *Id.*

**9.** Compl. ¶ 24.

Times had advanced more than $77 million to the defendants during the prior five years, including approximately $60 million related to the criminal proceeding. Despite that desire, after a February 27, 2008 office conference in this action, the Sun–Times agreed to resume advancement of the defendants' legal fees until this court resolved the Sun–Times' motion for partial summary judgment on the issue of whether it was required to continue to advance fees to the defendants after sentencing.

During that time, the defendants' appeals were consolidated, the appellate process moved forward, and post-conviction proceedings took place at the trial court level. During that process, Black, Boultbee, and Atkinson, who were the defendants who had been sentenced to prison time, filed motions for continued release pending appeal. Those motions were denied by the trial court. But on February 28, 2008 the Seventh Circuit granted the motions by Boultbee and Atkinson. The Seventh Circuit noted that all three defendants had "raised a 'substantial' question" concerning two of the mail fraud counts and granted the motions of Boultbee and Atkinson because "they might well receive on [the only other count of which they were convicted] alone sentences that are less than the time that would be required for this court to make a final decision." [10]

The defendants did not fare so well when the U.S. Court of Appeals for the Seventh Circuit actually issued its decision on the merits of the defendants' appeals. In a June 25, 2008 decision, the Seventh Circuit affirmed the convictions of the de-fendants on every count of which they were convicted.[11] As of now, the defendants are still within the 90 day period during which they may file a petition for certiorari to have the U.S. Supreme Court review the Seventh Circuit's decision.[12]

### B. The Contractual Sources Of Advancement

The Sun–Times' Certificate of Incorporation (the "Certificate") provides directors and officers advancement and indemnification "to the fullest extent permitted by applicable law."[13] The Sun–Times' Bylaws (the "Bylaws") also provide for mandatory advancement of attorneys' fees and expenses to directors and officers upon the receipt of an undertaking. The "Advancement Provision" in the Bylaws is as follows:

Section 4.6. Expenses Payable in Advance. Expenses (including attorneys' fees) incurred by a director or officer in defending or investigating any threatened or pending civil[,] criminal, administrative or investigative action, suit or proceeding shall be paid by the Corporation *in advance of the final disposition of such action*, suit or proceeding, upon receipt of an undertaking by or on behalf of such director or officer to *repay such amount if it shall ultimately be determined* that he is not entitled to be indemnified by the Corporation as authorized in this Article IV if such an undertaking is required by the General Corporation Law of the State of Dela-

**10.** *United States v. Black,* Nos. 07–4080, 08–1030 & 08–1072 (7th Cir. Feb. 28, 2008).

**11.** *United States v. Black,* 530 F.3d 596, 605–06 (7th Cir.2008).

**12.** Sup.Ct. R. 13 ("[A] petition for a writ of certiorari to review a judgment in any case,

civil or criminal, entered by . . . a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

**13.** Sun–Times Certificate Art. IX (b).

ware.[14]

Under the Advancement Provision, advanced funds must be repaid to the Sun–Times if it is "ultimately determined" that the director or officer who received those funds is not entitled to be indemnified. The Bylaws condition indemnification on the state of mind of the director or officer and make clear that, among other things, the mere fact of a conviction of any kind does not create a presumption that the director or officer acted with a non-indemnifiable state of mind. The "Indemnification Provision" states:

> Section 4.1. Indemnification in Actions, Suits or Proceedings Other Than Those by or in the Right of the Corporation. Subject to [the section explaining how indemnification shall be authorized], *the Corporation shall indemnify* any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director or officer of the Corporation, or is or was a director or officer of the Corporation and is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding *if he acted in good faith and in a manner he reasonably believed to be in or not opposed to*

> *the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. [T]he termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.*[15]

The Certificate and Bylaws also limit the Company's obligation to provide advancement or indemnification in proceedings initiated by a director or officer. The relevant portion of the Certificate states that "[the Sun–Times] shall be required to indemnify a person in connection with a *proceeding initiated* by such person only if the proceeding was authorized by the Board of Directors of the Corporation."[16] The Bylaws contain a more limiting provision. That provision states:

> Section 4.13. Limitation on Indemnification. Notwithstanding anything contained in this Article IV to the contrary, except for proceedings to enforce rights to indemnification (which shall be governed by Section 4.5), the Corporation shall not be obligated to indemnify any director or officer in connection with a *proceeding (or part thereof) initiated* by such person unless such proceeding (or part thereof) was authorized or consented to by the Board of Directors of the

---

**14.** Compl. Ex. P ("Sun–Times Bylaws") § 4.6 (emphasis added).

**15.** Sun–Times Bylaws § 4.1 (emphasis added).

**16.** Sun–Times Certificate Art. IX (b) (emphasis added).

Corporation.[17]

As a pre-condition to receiving advancement, the defendants all signed substantially similar undertakings. Those undertakings acknowledged that under the Advancement Provision the defendants' right to advancement was limited to expenses incurred "in defending or investigating" and expenses incurred "in advance of the final disposition."[18] In addition, Boultbee and Black signed settlement agreements with the Sun–Times resolving advancement disputes between those parties that expressly addressed when the Sun–Times' advancement obligation would terminate.[19] The "Boultbee Settlement Agreement" was executed on January 5, 2006.[20] It contained the following provision:

> 12. *Duration of Advancement:* Pursuant to [the Sun–Times'] bylaws, [the Sun–Times'] obligation to advance fees and expenses in each of the proceedings described in this Agreement shall continue until such time as it may ultimately be determined that Boultbee is not entitled to be indemnified by [the Sun–Times] in connection with each such proceeding. Amounts invoiced as of the time of such determination will be subject to advancement pursuant to the terms of this Agreement, as will amounts not yet billed but reflecting work performed or expenses incurred by Boultbee or on his behalf up to the date of the determination, notwithstanding such determination.[21]

The "Black Settlement Agreement" was signed on March 6, 2006.[22] In relevant part, that Agreement's provision on the duration of advancement is as follows:

> 6. *Obligation to repay/advance.*
>
> . . . .
>
> Any obligation on the part of [the Sun–Times] to pay advancement with respect to a specific matter or proceeding pursuant to this Agreement shall terminate if and to the extent it shall be determined by the Court of Chancery that Mr. Black is no longer entitled to that advancement or if and to the extent that it shall ultimately be determined that Mr. Black is not entitled to indemnification with respect to that matter or proceeding.[23]

## C. The Counts In The Sun–Times' Complaint

The Sun–Times' complaint contains six counts. Count One seeks a declaration that the Sun–Times has no obligation to advance funds to the defendants for appellate costs and for fees and expenses incurred after they were sentenced. Count Two seeks repayment or setoff of the amounts the Sun–Times advanced under protest after the defendants were sentenced. Counts Three and Four seek both a declaration and "clawback" repayment or setoff for the amounts previously advanced to the defendants in connection with the criminal counts of which they were convicted. Implicit in Counts Three and Four is

---

17. Sun–Times Bylaws § 4.13 (emphasis added).

18. Compl. ¶ 37; *see also id.* Ex. N (undertakings).

19. Atkinson also signed a settlement agreement with the Sun–Times, but that agreement merely referenced the Sun–Times Bylaws when addressing the duration of advancement.

20. Compl. Ex. A ("Boultbee Settlement Agreement").

21. *Id.* ¶ 12.

22. Compl. Ex. B ("Black Settlement Agreement").

23. *Id.* ¶ 6.

a request for an ultimate determination that the defendants are not entitled to indemnification for expenses incurred in connection with those criminal counts. Counts Five and Six seek both a declaration and repayment or setoff for the amounts advanced to the defendants for fees and expenses related to the defense of the criminal counts of which they were acquitted but only as to those portions of the fees and expenses that the Sun–Times claims were not reasonably incurred. Implicit in Counts Five and Six's request that I evaluate the reasonableness of the defendants' fees and expenses is that I evaluate the allocation of the defendants' fees and expenses between the criminal counts for which they were convicted and those for which they were acquitted.

### III. *Legal Standard*

■ The Sun–Times has moved for partial summary judgment on Count One of its complaint. Count One seeks a declaration pursuant to § 145(k) of the DGCL that the Sun–Times has no obligation to advance any legal fees and expenses incurred by the defendants after their sentencing, including any appellate fees and expenses. Rather than cross moving for summary judgment, the defendants oppose the Sun–Times' motion for partial summary judgment and have also moved to dismiss all the counts in the Sun–Times' complaint under Rule 12(b)(6). The reality of filing a motion for summary judg-

ment is that the moving party is asking the court to make a judgment and if "the court concludes that the moving party is not entitled to summary judgment, and the state of the record is such that the non-moving party clearly is entitled to such relief, the [court] may grant final judgment in favor of the nonmoving party."[24] The reasons underlying the court's inherent ability to grant summary judgment *sua sponte* against a party moving for summary judgment—the interests of justice and judicial economy—are equally applicable in this situation where the non-moving party has moved for dismissal of disputed claims.[25] Here, neither party believes a trial is necessary and the only relevant extrinsic evidence is the undisputed course of performance under the pertinent contractual sources of advancement. As such, I treat the parties' motions disputing the meaning of the Advancement Provision as if they were cross-motions for summary judgment. Count Two, which addresses recoupment of fees advanced after sentencing, is directly dependent on the meaning of the Advancement Provision and thus judgment on that Count is equally appropriate. Entering judgment on Counts One and Two is consistent with the notion that advancement proceedings are by statute summary proceedings[26] and that summary judgment practice is an efficient and appropriate method to expeditiously resolve advancement disputes.[27]

**24.** *Bank of Delaware v. Claymont Fire Co. No. 1,* 528 A.2d 1196, 1199 (Del.1987); *see generally* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (2008) ("The weight of authority ... is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

**25.** *See Bank of Delaware,* 528 A.2d at 1199 (explaining that "[t]he form of pleadings should not place a limitation upon the court's

ability to do justice"); *see also Stroud v. Grace,* 606 A.2d 75, 81 (Del.1992).

**26.** 8 *Del. C.* § 145(k) ("The Court of Chancery may summarily determine a corporation's obligation to advance expenses (including attorneys' fees).").

**27.** *See, e.g., Weinstock v. Lazard Debt Recovery GP, LLC,* 2003 WL 21843254, at *2 (Del.Ch. Aug. 8, 2003).

The motion for summary judgment on Counts One and Two is governed by the familiar Rule 56 standard. Under that standard, a "motion for summary judgment will be granted only when no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law." [28] The moving party bears the burden of establishing that there are no issues of material fact, and the court must review all evidence in the light most favorable to the non-moving party. [29]

In resolving the dispute over the meaning of the Advancement Provision, I apply the familiar canons of contract interpretation. [30] When the language of a contract is plain and unambiguous, the intent of the parties expressed in that language is binding. [31] If, however, the language of the contract is ambiguous, the court may look to extrinsic evidence to determine the parties' intent. [32]

In evaluating the defendants' motion to dismiss on Counts Three through Six, I must assume the truthfulness of all well-pled facts in the complaint and draw all reasonable inferences in the light most favorable to the Sun–Times, the nonmoving party. [33] I need not, however, accept as true conclusory allegations that are unsupported by facts contained in the complaint. [34] After analyzing the complaint in this manner, I must dismiss any claim that the Sun–Times would not be entitled to recover upon under any reasonable set of facts properly supported by the complaint. [35]

## IV. Legal Analysis

### A. The Duration Of Advancement

The Sun–Times' primary argument is that the defendants are not entitled to advancement for any legal expenses they incurred after their sentencing because the "final disposition" of a criminal proceeding occurs at sentencing. Consistent with that argument, the Sun–Times contends that an appeal of a criminal conviction is not the same "proceeding" as the trial court proceeding. Therefore, according to the Sun–Times, a defendant who appeals a criminal conviction is "initiating" a new proceeding and not "defending" a proceeding. Finally, the Sun–Times points out that under its Bylaws the Company is not obligated to "indemnify [the defendants] in connection with a proceeding (or part thereof) initiated by [them] unless such proceeding (or part thereof) was authorized or consented to by the [Sun–Times'] Board of Directors" [36] and argues that the Company is not required to provide advancement for the appeals because they are proceedings or parts of proceedings initiated without board approval.

The core dispute between the Sun–Times and the defendants is over an issue that is relevant to virtually all corporations, directors, and officers who are affected by the advancement and indemnifi-

28. *Scureman v. Judge*, 626 A.2d 5, 10 (Del.Ch. 1992).

29. *Id.* at 10–11.

30. *E.g., Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del.1992).

31. *E.g., id.*

32. *E.g., id.*

33. *E.g., In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del.2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del.2002)).

34. *E.g., Hughes*, 897 A.2d at 168 (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del.1995)).

35. *E.g., Hughes*, 897 A.2d at 168 (quoting *Savor*, 812 A.2d at 896–97).

36. Sun–Times Bylaws § 4.13.

cation provisions of § 145 of the DGCL. Although cast in terms of the specific Sun–Times' Advancement Provision, the parties' disagreement about the meaning of "final disposition," "action, suit or proceeding," and "defending" are a dispute over § 145 because the use of those terms in the Advancement Provision parallels the use of those terms in § 145(e).[37] The Sun–Times Certificate makes clear that this dispute is a dispute about the extent of § 145 because it grants advancement and indemnification rights to its officers and directors "to the fullest extent permitted by applicable law."[38] Reduced to its core, the question is whether advancement and ultimate indemnification rights turn on every provisional ruling at various stages of the underlying action, suit or proceeding or whether they turn on only the final, non-appealable resolution of the underlying action, suit or proceeding.

I turn now to resolving that interpretive question. I do so in this fashion. I begin by focusing on the linguistics of the key words "final disposition" of an "action, suit or proceeding" as they are used in § 145(e) and the Bylaws. In considering the linguistics, I also address a prior decision of this court that bears on the question. Then, I consider the parties' own course of performance under the Bylaws. Finally, I examine the practical and policy considerations that bear on the interpretative question.

### 1. *Linguistics*

#### a. *"Final Disposition" Of An "Action, Suit Or Proceeding"*

The key phrase in the Bylaws is that the "[e]xpenses (including attorneys' fees) incurred by a director or officer in defending or investigating any threatened or pending civil[,] criminal, administrative or investigative action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding."[39] The Sun–Times contends that "final disposition" is the same as the "final judgment" issued at the trial court level, regardless of whether an appeal is pending. The defendants counter that "final disposition" means the final, non-appealable conclusion of a proceeding. In analyzing the parties' dispute, I start first by evaluating the Sun–Times' claim that this court has already completely defined "final disposition" as that term is used in § 145(e) in *Bergonzi v. Rite Aid Corp.*[40]

*Bergonzi* is the only case law cited by the parties that directly addresses "final disposition" as that term is used in § 145(e). In *Bergonzi*, a corporate official who had entered a guilty plea in response to charges that he had, among other things, falsified the company's financial statements filed suit seeking continued advancement of his defense costs after he had pled guilty. The company counterclaimed seeking reimbursement of the

---

**37.** Section 145(e) states:

Expenses (including attorneys' fees) incurred by an officer or director *in defending* any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the *final disposition of such action, suit or proceeding* upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses

(including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.

8 *Del. C.* § 145(e) (emphasis added).

**38.** Sun–Times Certificate Art. IX (b).

**39.** Sun–Times Bylaws § 4.6.

**40.** 2003 WL 22407303 (Del.Ch. Oct.20, 2003).

funds that had already been advanced to the official. This court examined the company's charter, which used language similar to the Bylaws and § 145(e), stating that the company was required to advance "the expenses incurred defending any such proceeding in advance of its final disposition."[41] The court held that the company was required to continue advancing funds to the official even after his guilty plea was accepted by the trial court because "the entry of a guilty plea, before sentencing, is *not* a final disposition."[42] In concluding that the entry of a guilty plea before sentencing was not a final disposition, the court cited Delaware Supreme Court and United States Supreme Court authority stating that, in the context of determining when criminal conviction is ripe for appeal, the final judgment in a criminal case is the pronouncement of the sentence.[43]

■ The Sun–Times therefore argues that *Bergonzi* equated final disposition with final judgment. But *Bergonzi* only held that a guilty plea is not a final disposition, not that sentencing or a final judgment is the final disposition.[44] *Bergonzi's* holding and reasoning is consistent with the defendants' argument that final disposition means the final, non-appealable conclusion of a proceeding. In other words, there can be no final non-appealable conclusion of a proceeding when the trial court has yet to enter a final judgment triggering a right to appeal. *Bergonzi* also found that, consistent with its finding that there had been no final disposition, there had not been an ultimate determination that the officer was not entitled to indemnification and therefore he was not required to repay the funds previously advanced to him.

■ Indeed, the result in *Bergonzi* is striking but for a reason at odds with the Sun–Times' position. After all, *Bergonzi* resulted in an order that a defendant who had pled guilty to "participation in a criminal conspiracy to defraud [the company] while serving as its chief financial officer"[45]—a crime the elements of which require behavior seemingly impossible to reconcile with the standard for ultimate indemnification—was entitled to receive advancement *at least until* the trial court actually entered his guilty plea as a sentence. Most important, *Bergonzi* did not

41. *Id.* at *1.

42. *Id.* at *2 (emphasis in original); *see also id.* ("As Bergonzi is entitled to advancement until a final disposition of the proceedings, and as the proceedings have not yet reached a final disposition, Bergonzi has a presently enforceable right to advancement.").

43. *See Weaver v. State*, 779 A.2d 254, 258 (Del.2001) ("In Delaware, the benchmark of a 'final judgment' in a criminal case is the pronouncement of sentence."); *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence."); *see also* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3905 (supp.2007) (explaining the final judgment rule).

44. The court's focus on a "final judgment" was likely influenced by the fact that the officer's undertaking stated that he would repay any advancement he received "in the event that a court of competent jurisdiction ultimately determines in a final judgment that I am not entitled to indemnification." *Bergonzi*, 2003 WL 22407303, at *3. The company argued that the officer's guilty plea was an ultimate determination of the officer's right to indemnification, and, given the language of the undertaking, the court necessarily focused on, among other things, whether there had been a final judgment by the court to which the guilty plea had been given.

45. *Id.* at *2 ("In his guilty plea colloquy, Bergonzi admitted under oath to deliberate falsification of the Company's financial statements and receiving a fraudulently back-dated employment agreement purporting to grant him millions of dollars.").

require this court to determine whether a criminal proceeding was finally disposed of when a defendant was convicted by a jury and sought to appeal that conviction. *Bergonzi* only held that there was no final disposition of a criminal case simply because a defendant had already pled guilty. The issue of whether a criminal conviction that is subject to challenge on appeal is a final disposition was not presented in *Bergonzi* and the reasoning in that case is therefore at most useful dictum to consider. And as noted, *Bergonzi* also involved a guilty plea and must be read in that context, where Bergonzi's right to appeal his indemnification-stripping conviction was extremely limited such that on a practical level, the sentencing would be the final disposition.[46]

Having concluded that there is no case law providing a definitive interpretation of "final disposition" as it is used in § 145, I examine the definition of that term in general and then in the more particular context of the Certificate, Bylaws, and of § 145(e). Black's Law Dictionary defines "final disposition" as "[s]uch a conclusive determination of the subject-matter that after the award, judgment, or decision is made, nothing further remains to fix the rights and obligations of the parties, and *no further controversy or litigation can arise thereon.*"[47] The case cited by Black's, *Quarture v. Allegheny County,* is 1940 Pennsylvania Superior Court case that is one of the many cases to address the definition of final disposition and conclude that a final disposition is the final, non-appealable conclusion of a proceed-

**46.** *See id.* ("It appears, *as a practical matter,* that the proceedings have not reached their final disposition.") (emphasis added); *cf. Roe v. Flores–Ortega,* 528 U.S. 470, 473, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (stating that a "highly relevant factor" in evaluating an "ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal" is "whether the conviction follows a trial or a guilty plea, both because *a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings*") (emphasis added). After a guilty plea, the scope of appeal is limited, in general, to challenges to the voluntariness of the plea or the court's jurisdiction. *See United States v. Gonzalez–Mercado,* 402 F.3d 294, 298 (1st Cir.2005) ("Although a guilty plea waives most claims of error, it does not preclude an attack on the voluntary and intelligent character of the plea itself."); *Hayle v. United States,* 815 F.2d 879, 881 (2d Cir.1987) ("It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and waives all challenges to the prosecution except those going to the court's jurisdiction.") (internal citation omitted); *see also* 21 Am.Jur.2d *Crim. Law* § 671 (2008) ("A guilty . . . plea waives all defects in the indictment or information which are not jurisdictional. Thus, where a judgment was

entered on a plea of guilty, appellate review must be confined to irregularities that are disclosed by the record and go to the jurisdiction or to the legality of the proceedings."). In other words, unless the defendant can show that his guilty plea was not voluntary or informed—and the *Bergonzi* court went out of its way to show that the guilty plea was accepted as voluntary and informed—the defendant's guilty plea admits the elements of the criminal charge, including those that might bear on whether he acted with a non-indemnifiable state of mind. *See Bergonzi,* 2003 WL 22407303, at *2 ("The court accepted Bergonzi's guilty plea as knowingly and voluntarily made.").

**47.** Black's Law Dictionary 567 (5th ed.1979) (emphasis added). The current edition of Black's Law Dictionary does not define "final disposition." It does, however, define "disposition" as a "final settlement or determination" and uses the illustration "the court's disposition of the case." Black's Law Dictionary 505 (8th ed.2004). Thus, even without adding the word "final" in front of disposition, the current version of Black's defining disposition as a "final settlement or determination" of a proceeding seems to reflect the intent that the proceeding cannot be revisited and is not subject to any change because of, for example, a pending or possible appeal.

ing.[48] Those cases range from the 1871 U.S. Supreme Court case, *Ex Parte Russell*,[49] to a U.S. District Court case decided less than a week after oral argument in this case.[50]

But candor requires acknowledgment that the term final disposition has also been used to mean simply the result at the first stage of a judicial or administrative proceeding. Yet, it is telling that the Sun–Times does not argue that, in general, the term final disposition simply means an appealable "final judgment." Instead, the Sun–Times bases its argument that "final disposition" means a final judgment at the trial court level on the use of that term in practice in the criminal context. The Sun–Times notes, for example, that the Seventh Circuit has called a sentencing order "an Order of Final Disposition." [51] But that simply illustrates that the term final disposition can have different meanings in different contexts. As used by the Seventh Circuit, it clearly refers to an order constituting the last or "final" order entered by the trial court in a criminal case. It is common for cases to refer to final dispositions or final judgments in this way, as it is important for determining appellate rights and filing periods that it be clear when the trial court has concluded all of the work necessary so that it can enter its last word

on a case, making the matter ripe for appeal. In this case, for example, the sentencing orders in the criminal case underlying this action are titled "Judgment[s] in a Criminal Case." [52] Many final orders in Chancery are called "Final Orders" or "Final Judgments." But neither Chancery judges nor federal trial courts labor under any delusion that their final order in a case is the final word on the disposition of that case. If an appeal is taken, the "final disposition" depends on the results above, not just the outcome of the first trial court go-around.

All that the different usages of final disposition show is that context is important. What is the purpose of using the words final disposition in § 145(e) and advancement bylaws?

The "of what" question is an important one here in determining the meaning of final disposition. That is, it is critical to determine what the words "action, suit or proceeding" mean because that is what must be finally disposed of for the obligation to provide advancement to terminate. The Sun–Times argues that the term "proceeding" necessarily refers in the criminal context to the "*segment* commenced in the trial court." [53] Although the term proceeding has sometimes been de-

**48.** 141 Pa.Super. 356, 14 A.2d 575, 578 (1940).

**49.** 13 Wall. 664, 80 U.S. 664, 669, 20 L.Ed. 632 (1871) (finding that the "natural meaning of the words" "final disposition" is "the end of litigation thereon," which "cannot be said to have arrived as long as an appeal is pending").

**50.** *Fidelity & Guar. Ins. Underwriters, Inc. v. Allstate Roofing & Paving*, 2008 WL 2364279, at *2 (E.D.Mich. May 28, 2008) (rejecting a motion to lift a stay that was in place until the "final disposition" of a related action because the related action was on appeal).

**51.** *See United States v. Gilbert*, 45 F.3d 1163, 1165 (7th Cir.1995); *see also United States v. Rhodes*, 288 F.Supp.2d 928, 930 (C.D.Ill. 2003) (referring to a sentencing as a "final hearing" that results in the "entry of an order of final disposition").

**52.** *See* Compl. Exs. D–G; *see also id.* Exs. H–K (notices of appeal that state the defendants are appealing the "final judgment").

**53.** Sun–Times Rep. Br. at 20 (emphasis in original); *see, e.g., Perry v. State*, 575 A.2d 1154, 1154 (Del.1990) ("For the purpose of appeal to this Court, a criminal proceeding becomes final on the date the sentence is imposed by the trial judge.").

fined narrowly that way,[54] that is not invariably the case. Indeed, the Model Business Corporation Act, the most authoritative source with a definition of proceeding in the precise context of advancement and indemnification, defines the term proceeding broadly to include appeals from trial court rulings.[55] That broader definition is also more consistent with all the relevant terms in § 145(e) and the Advancement Provision. Those terms do not simply include the word proceeding, they also include the words "action"[56] and "suit,"[57] which are broad in scope and not easily segmented. Moreover, if one wants to add another term to the mix, the Seventh Circuit appears to refer to a criminal matter as a "case" and that "case" remains the same at the trial court level, and after remand.[58] A brief analysis of those terms leads to the conclusion that although they can have distinct definitions in certain circumstances, they are often used interchangeably and as definitions for one another. As with the term final disposition, the key issue here is what do the terms action, suit or proceeding most sensibly mean within the context of § 145 and the Advancement Provision.

■ In reading language, a court should not blind itself to the context in which the words are used. Rather, words are to be given their common meaning within the setting in which they are employed.[59]

54. BLACK'S LAW DICTIONARY 1241 (8th ed.2004) (defining "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and "[a]n act or step that is part of a larger action").

55. Model Business Corporation Act § 8.50, cmt. 6 (4th ed.2008) (noting that its definition of "proceeding" includes, among other things, "lawsuit appeals and petitions to review administrative actions"); see VonFeldt v. Stifel Fin. Corp., 714 A.2d 79, 85 (Del.1998) (using a definition contained in the same section of the Model Business Corporation Act to support its interpretation of "request" in § 145(a)). Compare Model Business Corporation Act § 8.50 (defining a "proceeding" as "any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative, or investigative and whether formal or informal") with 8 Del. C. § 145(e) (covering "any civil, criminal, administrative or investigative action, suit or proceeding").

56. BLACK'S LAW DICTIONARY 31 (8th ed.2004) (defining "action" as a "civil or criminal judicial proceeding"); 1A C.J.S. Actions § 1 ("Because the word action has no precise meaning, and the scope of proceedings included within the term as used in a statute depends upon the nature and purpose of the particular statute in question, courts take a functional approach in their construction of the word."); see also id. § 5 ("An appeal is a continuation of an original proceeding, and is not a new action."); 1 AM.JUR.2D Actions § 4 (same).

57. BLACK'S LAW DICTIONARY 1475 (8th ed.2004) (defining "suit" as "[a]ny proceeding by a party or parties against another in a court of law").

58. See 7th Cir. R. 36 ("Whenever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case."); see also BLACK'S LAW DICTIONARY 228 (8th ed.2004) (defining "case" as a "civil or criminal proceeding, action, suit, or controversy at law or in equity").

59. See, e.g., Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) ("Finality is variously defined; like many legal terms, its precise meaning depends on context."). The dispute over the meaning of "final disposition" as it is used to define the time within which a prevailing party in an adversarial administrative proceeding is permitted to file an application for attorneys' fees and costs under the Equal Access to Justice Act is representative. See 5 U.S.C. § 504(a)(2) ("A party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an applica-

When that is done the meaning of the Advancement Provision becomes evident, especially given that the Provision is to be interpreted broadly, per the mandate of the Certificate provision expressing an intention to provide directors and officers with advancement and indemnification "to the fullest extent permitted by applicable law."[60] Even without that important interpretive gloss, the term final disposition in both § 145 and the Advancement Provision is obviously linked to the concept of ultimate indemnification. Thus, the Provision states that expense incurred in defending a "civil [or] criminal ... action, suit or proceeding" shall be paid by the corporation, upon receipt of an undertaking that the amount shall be repaid if the recipient "shall ultimately be determined" not to be entitled to indemnification. The most logical reading of the text is that advancement must be provided until the underlying action, suit, or proceeding is finally resolved or disposed of, in the sense that its outcome is not subject to further disturbance. Why? Because it is only at that point that the ultimate determination that the recipient either was or was not entitled to indemnification can be made.[61]

In this regard, it is important to recognize that the drafters of § 145 and the Advancement Provision were not ingénues, ignorant of the complex administrative and legal actions, suits, and proceedings relevant to corporate officials. To the contrary, these texts exist precisely because the drafters were addressing the prevalence of such matters. Given that, it is counter-intuitive to think that they meant the term final disposition to only refer to the conclusion of the first stage of an administrative or judicial matter, which in turn would constitute but one of many "proceedings" in an overall ... what? I use ellipses because under the Sun Times' view it is not clear what word would capture the entirety of the matter addressed by the various proceedings. Would that be an action? Or a suit? To be concrete about an issue that arises because of the odd nature of the Sun–Times' argument, if each stage of the prosecution of Conrad Black constitutes a "proceeding," what is the word for the entirety of the process involved in his prosecution? The same question would arise in administrative matters, which often involve initial deter-

tion which shows that the party is a prevailing party and is eligible to receive an award under this section...."). The U.S. Courts of Appeals for two circuits, although finding the term itself ambiguous, have concluded that "final disposition" in the Equal Access to Justice Act means "final and unappealable, where all rights to appeal [have] run." *Scafar Contracting, Inc. v. Sec'y of Labor*, 325 F.3d 422, 431 (3d Cir.2003); *see also Adams v. SEC*, 287 F.3d 183, 190 (D.C.Cir.2002). Both Courts of Appeals decisions interpreting "final disposition" in the Equal Access to Justice Act section on administrative proceedings considered the context in which that term was used vital to determining its meaning. Likewise, Judge Posner's interpretation of "final judgment," which is used in place of "final disposition" in the parallel Equal Access to Justice provision for court proceedings, turned on the context in which that term

was used. *McDonald v. Schweiker*, 726 F.2d 311, 313 (7th Cir.1983) ("Context may disambiguate.... In this case we have only context, or stated otherwise purpose inferable from context, to guide us."). Congress, possibly in response to Judge Posner's comment that "Congress could easily resolve the question" that had generated a circuit split, later stepped in and defined that "final judgment" as "a judgment that is final and not appealable." *Id.* at 315; 28 U.S.C. § 2412(d)(2)(G).

60. Sun–Times Certificate Art. IX (b).

61. *See* DONALD J. WOLFE AND MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, § 8.02[a][1] (2008) ("A determination of whether a person is entitled to indemnification generally must await a non-appealable, final judgment in connection with the underlying litigation.").

minations by Administrative Law Judges, subject to review by administrative tribunals.

■ Reading § 145 and the Advancement Provision one would never get the sense that these questions would arise. The reason for that is simple. When read by someone with an understanding that administrative and judicial matters often have several stages and that such matters are not resolved until those stages are completed or there is no further opportunity to go to another stage, the words final disposition and action, suit or proceeding have only one apparent meaning. That is that an action, suit or proceeding refers to a discrete administrative or judicial matter involving a particular subject and encompasses all its stages, and that the final disposition of such an action, suit or proceeding occurs when its outcome is no longer subject to any further review as of right.

Such a reading would also be consonant with other uses of the word final in contexts when it is important and efficient that final be truly final.[62] In this regard, the Sun Times' invocation of references by trial courts to having done the final act necessary to make a case ripe for a non-interlocutory appeal actually cuts against its argument. In that context, what is important is that the trial court have completed all the tasks necessary for the entry of a final judgment in the trial court, such that the time for seeking appellate relief has arrived. In the context of advancement and indemnification, what seems the most relevant purpose of the use of the words final disposition is to ensure that the proceeding has been finally disposed of in the sense that the question of ultimate indemnification is now ripe for determina-

---

**62.** For example, a petition for a writ of habeas corpus "shall not be granted unless ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). Likewise, a state conviction becomes final, in the context of barring a federal court from granting habeas corpus relief based on retroactively applying a rule announced after the conviction, only once the conviction is final and non-appealable. *See Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."); *see also Clay*, 537 U.S. at 524–25, 123 S.Ct. 1072 (2003) (holding that "the date on which the judgment of conviction becomes final" for starting the statute of limitations for a federal prisoner to file a petition for a writ of habeas corpus is "when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"). "Final" has been interpreted to mean truly final in a multitude of other contexts. *See, e.g., supra* note 59 (discussing the Equal Access to Justice Act); *Twin Ports Oil Co. v. Pure Oil*

*Co.*, 26 F.Supp. 366, 369 (D.Minn.1939) (determining that "final judgment" means the "final disposition of the case, i.e., a final judgment by reason of failure to appeal within the statutory period, or a final judgment by reason of an affirmance of the appeal by the court of last resort," in the context of the Clayton Act provision that makes a "final judgment" obtained by the government in a civil or criminal antitrust action prima facie evidence of a violation in a private suit under those same laws); *In re Capano*, 2001 WL 1512993, 788 A.2d 130 (Del.2001) (TABLE) (noting that attorney was suspended from practice "pending the final disposition of the felony criminal charges against him," thus, only after a jury trial, conviction, death sentence, and affirmance after appeal, was he disbarred by the Supreme Court). Similarly, this court and other courts frequently stay a proceeding through the final disposition of a related action, including extending that stay through a pending appeal in the related action. *See, e.g., Enodis Corp. v. Amana Co., L.P.*, 2007 WL 1242193, at \*2–3 (Del.Ch. Apr. 26, 2007) (refusing to lift stay while appeal was pending in related case because the related case was not yet final); *Allstate Roofing & Paving*, 2008 WL 2364279, at \*2 (E.D.Mich. May 28, 2008) (same).

tion.[63] That is, advancement through the final disposition of a proceeding is best read as temporally connected to the "ultimate determination" of entitlement to indemnification, which only becomes ripe once the underlying proceeding is truly final.

For all these reasons, "final disposition" of an "action, suit or proceeding" is most plausibly read as meaning the final, non-appealable conclusion of a proceeding.

### b. *"Defending"*

■ The Sun–Times also argues that the Sun–Times Bylaws only extend mandatory advancement to "a director or officer in *defending* ... [an] action, suit or proceeding" and that the defendants are not "defending" on appeal. The use of "defending" in the Sun–Times Bylaws parallels the use of that term in § 145(e). Although defending in § 145(e) has not been explicitly held to encompass the concept of appealing a criminal conviction, defending has been interpreted broadly in the § 145 context. In *Citadel Holding Corp. v. Roven*, the Delaware Supreme Court rejected the argument that defending should be read to exclude affirmative defenses and compulsory counterclaims.[64] *Roven* reasoned that "[i]n a litigation context the term 'defense' has a broad meaning" and found that asserting both affirmative defenses and compulsory counterclaims were actions done "in defending" a plaintiff's claims.[65] *Roven* noted that the question of whether compulsory counterclaims were asserted in defending was the more difficult question but ultimately concluded that asserting compulsory counterclaims was defending. Specifically, the rationale underlying *Roven's* conclusion that asserting compulsory counterclaims was defending was that the counterclaims were "necessarily part of the same dispute and were *advanced to defeat, or offset*" the plaintiff's claims.[66]

Although *Roven* did not address the issue of whether filing an appeal of a criminal conviction is defending, appeals of criminal convictions fit squarely within *Roven's* definition of defending. Appeals are clearly designed to "defeat or offset" the prosecutor's claims against the defendant and are "necessarily part of the same dis-

---

**63.** *See, e.g., Cochran v. Stifel Fin. Corp.*, 2000 WL 286722, at *3 (Del.Ch. Mar. 8, 2000) (noting, in the context of performing a § 145(c) indemnification analysis, that "Cochran's acquittal became final during the summer of 1997" after the "federal government's request for *en banc* review was denied, and the government did not seek *certiorari* from the U.S. Supreme Court"), *aff'd in part, rev'd in part*, 809 A.2d 555 (Del.2002); *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 919–20 (Del. 2004) ("Generally, the matter on which the claim for indemnification is premised may be said to have been resolved with certainty only when the underlying investigation or litigation is definitely resolved.... Until the final judgment of the trial court withstands appellate review, the outcome of the underlying matter is not certain."); *cf. Haenel v. Epstein*, 88 A.D.2d 652, 653, 450 N.Y.S.2d 536 (1982) (holding that under New York law that "[w]here the action for which indemnification is sought is pending on appeal, it cannot be said that the defendant directors have been 'wholly successful.' ").

**64.** 603 A.2d 818, 824 (Del.1992).

**65.** *Id.; see also* BLACK'S LAW DICTIONARY 450–51 (8th ed.2004) (defining "defend" as "[t]o deny, contest, or oppose (an allegation or claim)" and "defense" as a "defendant's stated reason why the plaintiff or prosecutor has no valid case").

**66.** *Roven*, 603 A.2d at 824 (emphasis added); *see also Zaman v. Amedeo Holdings, Inc.*, 2008 WL 2168397, at *34 (Del.Ch. May 23, 2008) ("As I read *Roven*, the primary rationale was that the counterclaims were substantively defensive and thus within the scope of the contractual words 'in defending' because they 'were advanced to defeat, or offset' the corporation's claims against a director.").

pute." Put simply, the prosecutor's claim in a criminal proceeding is that the defendant should be convicted and therefore an appeal that seeks to overturn a conviction is advanced to defeat or offset the prosecutor's claim.[67] In fact, an appeal of a criminal conviction is even more closely tied to the concept of defending than a compulsory counterclaim because the only effect sought in an appeal is the negation of the prosecutor's claims. A compulsory counterclaim in a civil proceeding, on the other hand, often seeks affirmative relief against the original plaintiff in addition to defeating that plaintiff's claims. Likewise, the "necessarily part of the same dispute" reasoning in *Roven* is satisfied by an appeal. An appeal must arise from the trial court dispute and generally involves the same facts and legal arguments as the trial court dispute.[68] Furthermore, to the extent that *Roven* hinges on the "use or lose it" nature

of compulsory counterclaims, appeals must similarly be filed in a timely manner.[69] In sum, *Roven* suggests that an appeal of a conviction is defending, in the sense of § 145(e)'s use of defending a proceeding.[70]

### 2. *Course of Performance*

When the terms of an agreement are ambiguous, "any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."[71] Here, the course of performance of the Advancement Provision is compelling and suggests that the Sun–Times interpreted that Provision as providing advancement through the appellate process. Directly on point is that the Sun–Times advanced funds to Black for his appeal of this court's "Order and Final Judgment" awarding injunctive, declaratory, and monetary relief against Black.[72] When asked about the Sun–

---

67. This statement, of course, is influenced by *Roven's* broad interpretation of defending and the context of corporate advancement and indemnification. I recognize that in other contexts, such as whether an indigent has a right to counsel on appeal, the perception of whether a criminal defendant is defending on appeal may differ. *E.g., Ross v. Moffitt,* 417 U.S. 600, 610–11, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ("By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or a jury below. The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt.").

68. *See, e.g.,* WAYNE R. LAFAVE ET AL. CRIMINAL PROCEDURE § 27.5(c) (3d ed. 2008) ("Perhaps no standard governing the scope of appellate review is more frequently applied than the rule that an error not raised and preserved at trial will not be considered on appeal.") (quotation omitted).

69. In my view, I concede, *Roven's* central holding does not logically turn on the "use it

or lose it" nature of counterclaims. *See Zaman,* 2008 WL 2168397, at *34–36. In the criminal context, however, an appeal of a conviction, for all practical purposes, is the final shot at defeating the prosecution, in the defensive sense outlined in *Roven.* Use your appellate rights or lose your freedom is the apt rephrasing in that context.

70. The stark nature of the Sun–Times' position that convicted criminal defendants are not defending on appeal is evident in the Sun–Times' view that those defendants would not be entitled to mandatory indemnification for their appellate costs if they were convicted at the trial level but their convictions were vacated—that is, the defendants were completely exonerated—at the appellate level. Tr. at 15–16. I discuss this problem, *infra,* at Section IV.A.3.

71. RESTATEMENT (SECOND) OF CONTRACTS § 202; *see id* cmt. g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.").

72. *Hollinger Int'l, Inc. v. Black,* C.A. No. 183–N, 2004 WL 5322714 (Del.Ch. June 28, 2004) (Order and Final Judgment); *see also Holling-*

Times' decision to advance on appeal in the civil proceeding in this court, the best explanation that the Sun–Times' counsel could give was that "[i]t was never an issue." [73] That answer, of course, is consistent with the fact that the Sun–Times understood that an appeal is part of the same proceeding as the trial court hearing and that there is no final disposition of a proceeding that would cutoff its advancement obligation until there is a final, non-appealable conclusion to a proceeding. Likewise, the Sun–Times did not seek repayment for its advancement to Black in the "Delaware Litigation"—the term the Sun–Times has repeatedly used to cover

both the trial court and appellate stages in the Delaware case—until several weeks after the trial court judgment was affirmed on appeal.[74]

### 3. *The Policy Implications*

The Advancement Provision parallels § 145(e) and the bylaws of many other Delaware corporations yet only one recent case has raised the issue of whether "final disposition" means the final judgment at the trial court level such that the corporation can cut off its obligation to advance legal expenses on appeal.[75] Corporate officials frequently appeal trial court decisions

---

*er Int'l, Inc. v. Black*, 844 A.2d 1022 (preliminary injunction opinion); *Hollinger Int'l, Inc. v. Black*, C.A. No. 183–N (Del.Ch. May 19, 2004) (transcript of bench ruling on liability and damages); *Black v. Hollinger Int'l, Inc.*, 872 A.2d 559, 568 (Del.2005) (opinion on appeal affirming the rulings by the Court of Chancery in their entirety).

**73.** Tr. at 42.

**74.** Answer and Counterclaim ¶ 79 in *Black v. Hollinger Int'l, Inc.*, C.A. No. 1339–VCS; *see also id.* Ex. J (letter demanding that Black repay all amounts advanced in "the matters captioned as *Holllinger International Inc. v. Black*, Del. Ch., C.A. No. 183–N and *Black v. Hollinger International Inc.*, Del.Supr. Nos. 130, 292 and 304, 2004 (Consolidated) (collectively, the 'Delaware Litigation')"); *cf.* BLACK'S LAW DICTIONARY 952 (8th ed.2004) (defining "litigation" as a "lawsuit itself" and using the example "several *litigations* pending before the court") (emphasis added).

**75.** In *Underbrink v. Warrior Energy Services Corp.*, the company attempted to evade its advancement obligation by arguing that the undertakings signed by two corporate officials were invalid because those undertakings included the limitation that the officials would not repay any amounts advanced until "all appellate remedies related to [a determination that [they are] not entitled to indemnification] have expired or been exhausted." 2008 WL 2262316, at *13 (Del.Ch. May 30, 2008). The company contended that the officials' undertakings failed to comply with its bylaws be-

cause the bylaws did not give the officials "the right to exhaust all appellate remedies before they [had] to repay amounts improperly advanced." *Id.* In the context of that dispute, the parties argued over the meaning of "final disposition." Ultimately, the court determined that it did not have to resolve the dispute over the meaning of final disposition. The court did, however, seem to cast doubt on the construction of final disposition as the "final judgment" at the trial court level by commenting that the company "cites no precedent or evidence for reading 'final disposition' to mean 'final judgment.' " *Id.* at *14.

Candidly, the Sun–Times' argument is not strengthened by the fact that the company in *Underbrink* preceded the Sun–Times in making the final disposition argument by a short period of time. Rather than suggesting that the companies and their attorneys have discovered a critical issue with the interpretation of heretofore inexplicably ignored language in § 145(e), the timing suggests that as this court has addressed the "reflexive challenges to advancement claims that have proliferated in such number before this court recently," companies are being forced to search even harder for increasingly strained arguments that will allow them to delay living up to seemingly clear advancement obligations. *Radiancy, Inc. v. Azar*, 2006 WL 224059, at *5 (Del.Ch. Jan. 23, 2006); *see also Barrett v. Am. Country Holdings, Inc.*, 951 A.2d 735, 746–47 (Del.Ch.2008) (discussing this trend and providing an example of a frivolous defense to a clear advancement obligation).

and one would presume that if corporations were not advancing funds to those corporate officials, at least one of those corporate officials would have brought suit. Counsel for the Sun–Times posits that it might be the case that firms and clients "have assumed without analysis that there is an entitlement to continued advancement" during an appeal.[76] If that is the case, the treatises on Delaware corporate law have also made that assumption without analysis because none of those treatises even suggest that it might be an issue.[77] Although it is possible that litigants in this court and the Delaware corporate law treatises have made unfounded assumptions about the meaning of final disposition, the more likely scenario is that everyone understood that final disposition meant the final, non-appealable conclusion of a proceeding because that is the only meaning that makes sense in the context of advancement.

The conclusion that final disposition in the context of § 145 is the final, non-appealable conclusion of a proceeding is supported by the fact that the other courts that have addressed final disposition under other states' advancement statutes have all interpreted final disposition as the final, non-appealable conclusion of a proceeding. In *Theriot v. Bourg*, the Louisiana Court of Appeal rejected the argument that "final disposition" in that state's advancement statute means the "final judgment" at the trial court level.[78] It stated that "[t]he law requires a fair and genuine construction of a legislative act, a reasonable construction in light of the act's purpose" and that "a case reaches its 'final disposition' once all avenues of appeal are exhausted."[79] Likewise, in *Lussier v. Mau–Van Development, Inc.*, the Hawaii Court of Appeals came to the same conclusion.[80] It italicized "final disposition of such proceeding" in Hawaii's advancement statute, stated that the statute "clearly requires finality," and concluded that a "trial court's determination which is pending disposition on appeal is not a 'final disposition' of the proceeding."[81] The Sun–Times argues that these decisions are not persuasive because they reach that conclusion "with no analysis whatsoever."[82] But there is another conclusion that can be drawn from that fact—the meaning of final disposition in the context of advancement is straightforward and needs little explanation.

As an interpretive matter, it is also important to consider the practical implica-

---

**76.** Tr. at 60.

**77.** *See* David A. Drexler, Lewis S. Black, Jr. & A. Gilchrist Sparks, III, Delaware Corporation Law and Practice § 16.04 (2008) (The Advance of Expenses); R. Franklin Balotti & Jesse A. Finklestein, Delaware Law of Corporations and Business Organizations § 4.12[D] (2008) (Advancement of Expenses); Edward P. Welch, Andrew Turezyn, and Robert S. Saunders, Folk on the Delaware General Corporation Law § 145.8 (5th ed. 2008) (Advancement of Litigation Expenses); Donald J. Wolfe and Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery, § 8.02[b] (2008) (Advancement of Expenses); *id.* § 8.02[i] (Defenses to Suits Seeking Indemnification or Advancement).

**78.** 691 So.2d 213, 227–28 (La.Ct.App.1997).

**79.** *Id.*

**80.** 4 Haw.App. 421, 667 P.2d 830, 833, 834 (1983) (using its interpretation of the advancement statute to support its interpretation that the mandatory indemnification statute's requirement that the official be "successful on the merits or otherwise" "means that if a favorable trial court's decision on the merits or otherwise is appealed, the corporate agent is not 'successful' until the entry of a favorable and final appellate ruling").

**81.** *Id.* at 834.

**82.** Tr. at 112.

tions of the Sun–Times' position. The system ·of advancement and indemnification that would result from the Sun–Times' interpretation of final disposition as the final judgment at the trial court level would be odd, complex, inefficient, and capricious. Moreover, it is difficult to grasp completely because the Sun–Times is not entirely clear in explaining how that system would work. Nevertheless I attempt to explain that system and its consequences to show why it is that the final disposition of a proceeding must be the final, non-appealable conclusion of that proceeding.

The "Sun–Times System" for advancement and indemnification is premised on the following elements: (1) the "final disposition" is the final judgment at the trial court or administrative hearing level, which is, in itself, a separate "proceeding;" (2) an "ultimate determination" of whether an official is entitled to be indemnified should be made after the final judgment at the trial court or administrative hearing level; and (3) each successive stage of a judicial or administrative matter constitutes a separate "proceeding" such that multiple "final dispositions" can result.

 The oddities of the Sun–Times System become clear when one applies it to some examples of what might take place in a real-world proceeding. First, assume that a criminal defendant who was receiving advancement was convicted and sentenced to a crime that included as one of its essential elements a jury finding that the official had a non-indemnifiable state of mind.[83] Further assume that the defendant appeals his conviction and the appeal is pending. Under the Sun–Times System, the defendant would not be entitled to advancement for the appeal because there would have been a final disposition of the trial court proceeding and the defendant would not be defending on appeal. Moreover, under the Sun–Times System, it would then be appropriate to have a court ultimately determine that the official is not entitled to advancement and the official would be required to repay any advanced funds to the corporation. In other words, under the Sun–Times System, at the time the official most needs funds to pay appellate costs to attempt to defeat a criminal conviction, the official would not only not receive advancement of the appellate costs, but also be required to repay the previously advanced funds.

Fastforward to the appellate decision and assume that the appellate court reverses the trial court and remands for a retrial. The court that ultimately determined that the defendant was not entitled to indemnification using the trial court conviction which was still the subject of appellate proceedings and had to repay the advancement it had received would presumably have to revisit its supposedly ultimate determination. Likely, the corporation would have to refund the advancement

---

**83.** An official may be indemnified under § 145(a) only "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful." 8 *Del. C.* § 145(a). Thus, if to obtain conviction the prosecution was required to prove that the person had a non-indemnifiable state of mind, that would be conclusive evidence that the person is not entitled to indemnification, irrespective of § 145(a)'s statement that a conviction "shall not, of itself, create a presumption" that the convicted official had a non-indemnifiable state of mind. That is, the mere fact of being convicted of a crime does not create a presumption of a non-indemnifiable state of mind, but if, for example, a corporate official were convicted of intentional theft of corporate assets and burglary of the corporation's premises, that conviction would be conclusive evidence that the official acted with a non-indemnifiable state of mind.

that the official repaid. The corporation would also have to resume advancement for the retrial. But the official would not have received advancement for the appeal and would not be entitled to mandatory indemnification because in the Sun–Times' world view he would have been playing offense.[84] As the Sun–Times notes, the official could seek permissive indemnification of the appellate costs under § 145(a). But in the real world one would have to question whether the corporation would choose to indemnify the official at that point, after all, would the Sun–Times do such a thing for Conrad Black?

But, even more bizarrely, perhaps the Sun–Times System would leave the defendant holding the bag for his original trial court defense (which had failed) because that trial or "proceeding" resulted in a "finally dispositive" guilty verdict, regardless of the fact that it was reversed on appeal. Arguably, that could even be the result if the defendant was acquitted on his retrial!

Assume a different variation. In this version, when the defendant prevails on appeal and the appellate court vacates his conviction, the prosecutor decides to petition the U.S. Supreme Court for certiorari and the petition is granted, beginning yet another new proceeding in the Supreme Court. The defendant would be defending in that proceeding and be entitled to advancement. But then, before the U.S. Supreme Court holds oral argument, it decides another case that potentially affects the appellate court decision and rather than going forward with oral argument, it orders the case back to the appellate court for consideration of the recent decision.

The Sun–Times acknowledges that under its view, the defendants could then be considered to be "in defensive mode" before the appellate court in this distinct proceeding and thus "entitled to advancement."[85] In other words, the defendants would be before the same appellate court twice, dealing with the same facts and making the same arguments, but be entitled to advancement in one of those appearances and not the other. And of course, the Supreme Court could ultimately reverse, but require a new trial. That could give rise to another round of exciting possibilities for turning on and off the advancement spigot in various discrete "proceedings" and for multiple judicial rulings on "ultimate" indemnification.

Conjure up a different scenario in which the defendant prevailed in the Supreme Court but is eventually convicted on a new trial of the charges against him and that conviction survives further challenge. The Sun–Times System produces yet another strange result because the success-based indemnification standard for directors contained in § 145(c) puts another twist in this nasty cocktail. Section 145(c) would mandate ultimate indemnification of a criminal defendant successful in "defending" any stage that the Sun–Times deems a "proceeding," even if the defendant was, in the end, convicted of a heinous crime utterly inconsistent with the state of mind required for ultimate indemnification. Because the defendant—though a faithless fiduciary of the criminal kind—had won a provisional victory on appeal and thus a "proceeding," the corporation would have no right to recoup the costs for that independent proceeding.[86] And, lest one be-

---

84. See § 8 Del. C. § 145(c) (providing that mandatory indemnification only applies "[t]o the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of" a proceeding) (emphasis added).

85. Tr. at 50.

86. The Sun–Times suggests that this mandatory indemnification would be subject to clawback if the defendant lost on retrial and thus was found to have a non-indemnifiable state

lieve that only criminal cases could involve multiple appeals with various provisional winners and losers, ponder two corporate sagas: the *Technicolor*[87] and *Emerald Partners*[88] cases.

Before concluding the discussion of the practical effects of the Sun–Times System, it is important to note that the Sun–Times equivocated about what would happen under its System in particular instances such as whether the corporation would have to refund the advancement the official had repaid to the corporation after a conviction that formed the basis of an ultimate determination that the official was not entitled to advancement was overturned on appeal[89] or whether a defendant would be defending (and thus entitled to advancement) at the appellate level if the Supreme Court ordered the appellate court to reconsider its decision in light of recent precedent.[90] That the Sun–Times equivocates combines with its observation that many of the key questions are "fact specific"[91] to highlight the inefficient and litigation intensive world it seeks to create.

■ Not to be forgotten in this regard is the reality that the proliferation of "proceedings" would not simplify the compli-

cated issues that typically arise in ultimate indemnification proceedings. Rather, the Sun–Times System would encourage the serial litigation of the issues that traditionally arise in indemnification suits, such as the allocation of fees between claims or counts subject to indemnification and those that are not. The adjudication of these issues on a stage-by-stage basis would be astoundingly wasteful and a clear signal of design failure.[92]

■ Beyond these problems, the Sun–Times System would have the effect of precluding corporations from advancing appellate costs to officials in certain situations. Under the Sun–Times System, officials who are convicted at the trial court level of a crime whose essential elements clearly demonstrate a non-indemnifiable state of mind would have to be found by this court to be not entitled to ultimate indemnification. That is, this court would, by virtue of estoppel principles, have to find that such officials lacked the required good faith to receive indemnification. Knowing that was the situation, the corporation's directors would act at great peril in advancing funds to the officials on appeal because it would be advancing funds to officials who had essentially already

of mind. Tr. at 26. But that contradicts § 145(c) which has no state of mind requirement, just a success standard.

**87.** *See Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26, 30 & n. 1 (Del.2005) (noting that it was the sixth appeal involving the *Technicolor* fiduciary duty and appraisal actions).

**88.** *See Emerald Partners v. Berlin*, 2003 WL 21003437, at *1 nn. 1, 2, 5 (Del.Ch. Apr. 28, 2003) (explaining the fifteen year history of *Emerald Partners* that included trips back-and-forth between the Court of Chancery and the Supreme Court), *aff'd*, 840 A.2d 641 (Del. 2003).

**89.** Tr. at 34.

**90.** Tr. at 50.

**91.** *See* Tr. at 49, 50, 110; *see also* Tr. at 16 ("it would turn on the specifics").

**92.** *See Simon v. Navellier Series Fund*, 2000 WL 1597890, at *9 (Del.Ch. Oct. 19, 2000) ("As a matter of litigative efficiency, it makes little sense for this court to decide claims for indemnification—as opposed to claims for advancement of litigation expenses—in advance of a non-appealable final judgment. There is simply too great a risk that the appellate courts will take a different view than the trial court for it to make much sense to grapple with indemnification claims until the underlying litigation is concluded with finality."); *see also supra* note 63 (gathering cases discussing the importance of finality to ultimate indemnification).

been ultimately determined to have no right to retain those funds.[93]

For all these reasons, it seems exceedingly unlikely that the drafters of § 145(e) and the Advancement Provision meant to embrace the Sun–Times System. That System is unwieldy, inefficient, and likely to produce absurd and capricious outcomes.

Moreover, to the extent there is any ambiguity in the meaning of final disposition in the advancement context, the Delaware policy gloss favoring advancement to corporate officials supports resolving that ambiguity in favor of advancement on appeal. The Delaware Supreme Court has explained the "legislative intent and policy" behind § 145 and the resulting interpretive gloss as follows:

> We have long recognized that Section 145 serves the dual policies of: (a) allowing corporate officials to resist unjustified lawsuits, secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation; and (b) encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity. *We eschew narrow construction of the statute where an overliteral reading would disserve these policies.*[94]

Here, in interpreting final disposition, I have already found that the most common and natural usage of that term is the final, non-appealable conclusion of a proceeding. Applying the policy gloss in favor of advancement to corporate officials only strengthens the view that a final disposition is not reached until there is a final, non-appealable conclusion to a proceeding. To find otherwise would be to interpret § 145(e) as creating a patchwork system of advancement that fails to provide advancement to officials for the appeal of an adverse trial court judgment. Moreover, doing so would contradict Delaware's policy of encouraging officials to resist unjustified lawsuits by discouraging them from appealing adverse trial court judgments.[95] In turn, that might discourage qualified

93. Section 145(f) of the DGCL has been interpreted as not authorizing the use of contracts to grant advancement and indemnification rights that are "contrary to the limitations or prohibitions set forth in the other section 145 subsections, other statutes, court decisions, or public policy." *Cochran v. Stifel Fin. Corp.,* 2000 WL 286722, at *18 (Del.Ch. Mar. 8, 2000), *rev'd on other grounds,* 809 A.2d 555 (Del.2002) (quoting E. Norman Veasey et al., *Delaware Supports Directors with a Three–Legged Stool of Limited Liability, Indemnification, and Insurance,* 42 Bus. Law. 399, 415 (1987)). Therefore, "as far as § 145 is concerned, Delaware corporations lack the power to indemnify a party who did not act in good faith or in the best interests of the corporation." *VonFeldt v. Stifel Fin. Corp.,* 1999 WL 413393, *2 (Del.Ch. June 11, 1999); *see also Waltuch v. Conticommodity Servs., Inc.,* 88 F.3d 87, 95 (2d Cir.1996) (finding that a charter provision "which would require indemnification of [a corporate official] even if he acted in bad faith, is inconsistent with § 145(a) and thus exceeds the scope of a Delaware corporation's power to indemnify").

94. *VonFeldt v. Stifel Fin. Corp.,* 714 A.2d 79, 84 (Del.1998) (footnote omitted) (emphasis added); *see Reinhard & Kreinberg v. Dow Chem. Co.,* 2008 WL 868108, at *2 (Del.Ch. Mar. 28, 2008) ("Although courts use the tools of contractual interpretation when construing bylaw provisions relating to indemnification and advancement, they simultaneously apply the patina of section 145's policy.") (footnotes omitted); *see also Ridder v. CityFed Fin. Corp.,* 47 F.3d 85, 87 (3d Cir.1995) (stating that § 145(e) "plainly reflect[s] a legislative determination to avoid deterring qualified persons from accepting responsible positions with financial institutions for fear of incurring liabilities greatly in excess of their means, and to enhance the reliability of litigation-outcomes involving directors and officers of corporations by assuring a level playing field").

95. The Sun–Times suggests that corporate officials could always fund the appeal them-

individuals from serving at Delaware corporations.

The Sun–Times argues that I should ignore the policy behind § 145 once officials are sentenced at the trial court level because at that point officials are no longer presumed to be innocent[96] and have the burden on appeal to show that the conviction should be overturned.[97] The Sun–Times' argument, however, is at odds with *Bergonzi*, the primary case it relies upon for its definition of final disposition. *Bergonzi* required the continued advancement of funds to a corporate official who had plead guilty—that is, voluntarily admitted his guilt. If the Sun–Times is correct that a presumption of guilt and a shift in the burden means that the policy favoring advancement is no longer applicable, then it

would not apply after a judicially-accepted guilty plea that carries a "presumption of verity" that "is overcome only if the defendant satisfies a heavy burden of persuasion."[98]

But beyond the existence of inconsistency in the Sun–Times' arguments, the Sun–Times' argument that the policy behind § 145 no longer applies after a trial court conviction is unpersuasive. Although the U.S. Constitution "does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors,"[99] the right to appeal at least once has been described as "sacrosanct"[100] and criminal appeals have been described as "play[ing] a critical role in assuring the accuracy of criminal adjudications."[101] Trial courts judgments are not infrequent-

selves and that "[h]yperbole of this sort conjures up colorful images of naïve, indigent corporate officials." Sun–Times Rep. Br. at 41. But the reality is that not all corporate officials are independently wealthy and those corporate officials in need of funds for appellate costs might have a difficult time finding lenders (or attorneys) willing to extend credit to a convicted criminal even if that lender found the official's case compelling because under the Sun–Times System even an official who prevailed on the appeal and was ultimately cleared of all charges would not receive complete mandatory indemnification.

**96.** *See, e.g., Herrera v. Collins,* 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.").

**97.** *See, e.g., United States v. St. John,* 254 F. 794, 796 (7th Cir.1918) ("After conviction and sentence, the burden is upon the convicted party to show error in the conviction.").

**98.** *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir.1995) (internal quotation and citation omitted).

**99.** *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

**100.** *See* Harlon Leigh Dalton, *Taking the Right To Appeal (More or Less) Seriously,* 95 YALE L.J. 62, 62 & n. 2 (1985) (stating that "[t]he right to appeal at least once without obtaining prior court approval is nearly universal" within the United States); *see also* Del. Const. art. IV, § 11(1)(b) (granting the Delaware Supreme Court jurisdiction "[t]o receive appeals from the Superior Court in criminal causes, upon application of the accused in all cases in which the sentence shall be death, imprisonment exceeding one month, or fine exceeding One Hundred Dollars, and in such other cases as shall be provided by law"); *id.* § 28 (granting the General Assembly the authority to create inferior courts with criminal jurisdiction but requiring "that there shall be an appeal to the Superior Court in all cases in which the sentence shall be imprisonment exceeding one (1) month, or a fine exceeding One Hundred Dollars ($100.00)").

**101.** Marc M. Arkin, *Rethinking the Constitutional Right to a Criminal Appeal,* 39 UCLA L.REV. 503, 578–79 (1992) (supporting that view by noting that "reversals of trial outcomes are surprisingly common considering the expansive use of the doctrine of harmless error").

ly reversed on appeal.[102] In recognition of those facts, a state that provides a criminal appeal as of right must supply an indigent appellant in a criminal case with an attorney for such an appeal.[103]

Against that backdrop, it is unlikely that § 145(e) was drafted using the terms final disposition, action, suit or proceeding, and in defense in such a way that its empowering scope would not cover appellate costs. Section 145(e) serves only to authorize corporations to provide advancement to their officials and allows corporations to contractually limit that right.[104] Given the impor-

tance of appellate rights in the American system of justice and the ability of corporations to carve back on the default language used in § 145(e), it seems unlikely that the General Assembly used the words final disposition to mean the final judgment in a trial court such that the language in § 145(e) would not give corporations the discretion to advance appellate costs to corporate officials.

### 4. The Remaining Arguments

■ There are two remaining arguments that I will treat very briefly. The

---

**102.** *See, e.g.,* ADMINISTRATIVE OFFICE OF THE U.S. COURTS, JUDICIAL BUSINESS: ANNUAL REPORT OF THE DIRECTOR Table B–5 (2007) (noting that the reversal rate for appeals terminated on the merits by all the U.S. Courts of Appeals was 8.3% for all cases and 5.3% for criminal cases; Marc M. Arkin, *Rethinking the Constitutional Right to a Criminal Appeal,* 39 UCLA L.REV. 503, 513–20 (1992) (surveying the information available on reversal rates and concluding that "appeals make a significant difference in both the state and federal systems"); Note, *Courting Reversal: The Supervisory Role of State Supreme Courts,* 87 YALE L.J. 1191, 1209 (1978) (finding that state supreme courts reversed the lower court's ruling in 35.6% of the criminal cases included in its sample of cases from 1870 to 1970). The Seventh Circuit, where the defendants' appeal was pending, frequently reverses the trial court judgment in criminal actions. *See* ADMINISTRATIVE OFFICE OF THE U.S. COURTS, JUDICIAL BUSINESS: ANNUAL REPORT OF THE DIRECTOR (2003–2007) (noting that the reversal rates for criminal actions in the Seventh Circuit during the last five years, 2003–2007, were 6.5%, 14.5%, 22.8%, 12.1%, and 9.2%, respectively).

**103.** *See Evitts,* 469 U.S. at 393–94, 105 S.Ct. 830; *see also* WAYNE R. LAFAVE ET AL. CRIMINAL PROCEDURE § 27.1(b) (3d ed. 2008) ("The constitutional guarantee of effective assistance of counsel on the first appeal granted of right under state law is not limited to appointed counsel. The Supreme Court has held that the Constitution guarantees to all defendants a right to be represented by counsel on [the first appeal granted of right under state law] and to effective assistance by such counsel.").

**104.** *See Brooks–McCollum v. Emerald Ridge Serv. Corp.,* 2004 WL 1752852, at *2 (Del.Ch. July 29, 2004) (stating that § 145(e) is "permissive, not mandatory" and that therefore "a corporation is free to limit the terms of advancement and even preclude advancement entirely") (emphasis omitted). As a practical matter, it is easy to craft a sensible system to opt-out of appellate costs because that system does not involve the proliferation of statutorily defined "proceedings" or the cramped view of "defending" that the Sun–Times System necessarily entails. A corporation could grant mandatory advancement but circumscribe that obligation so that it explicitly excludes advancement for costs incurred in connection with any appellate stages of a proceeding. Under that system, the ultimate determination of a corporate official's right to indemnification would not take place until the *singular proceeding* was truly final and the official would not be required to return any advancement until that point. As explained above, the reason for that result is that success in the proceeding depends on the final outcome of the entire proceeding. Moreover, were it the case that the official was unsuccessful in defending charges at the trial court level, appealed and paid his own costs on appeal, was successful at the appellate level garnering a retrial, and was successful in defeating the charges on retrial, that official would be entitled to mandatory indemnification for his appellate costs because those costs would have been incurred in successfully defending charges against him.

Sun–Times argues that the language in its Bylaws stating that "the Corporation shall not be obligated to indemnify any director or officer in connection with a proceeding (or part thereof) initiated by such person unless such proceeding (or part thereof) was authorized or consented to by the Board of Directors of the Corporation" means that the Sun–Times is not required to advance funds to the defendants on appeal because they did not obtain board approval before initiating their appeals.[105] As explained above, in the context of advancement and indemnification, proceeding is the entire underlying proceeding including appeals and defending includes filing an appeal. The issue here is the effect of the "part thereof" language. First, I note that the "part thereof" in the Bylaws is more restrictive than and inconsistent with the Certificate, which states that "[the Sun–Times] shall be required to indemnify a person in connection with a proceeding initiated by such person only if the proceeding was authorized by the Board of Directors of the Corporation."[106] Thus, the additional "part thereof" restriction is invalid.[107] Moreover, if the "part thereof" restriction were to have any effect, it would be limiting "part proceedings" such as permissive counterclaims or third-party claims that are offensive as opposed to defensive actions.[108] To conclude otherwise would lead to anomalous results such as that the defendants would need board

approval to initiate an "offensive" motion to dismiss.

■■■ Defendants Boultbee and Black argue that the language of their Settlement Agreements further mandate the dismissal of the Sun–Times attempt to cutoff their advancement rights. The Boultbee Settlement Agreement states that the Sun–Times advancement of his litigation expenses "shall continue until such time as it may ultimately be determined that Boultbee is not entitled to be indemnified."[109] The Black Settlement Agreement requires that the Sun–Times continue advancement to Black until either this court determines that Black is no longer entitled to advancement or it is ultimately determined that Black is not entitled to be indemnified.[110] There has been no ultimate determination that Boultbee or Black is not entitled to be indemnified and this court has not determined that Black is no longer entitled to advancement.

The Sun–Times argues that although the Settlement Agreements refer to the criminal proceeding in the U.S. District Court neither Agreement expressly includes appeals and that therefore any appeals are not covered by those Agreements. That argument is unconvincing. Like the Advancement Provision itself, the Agreements all refer to funds being advanced subject to the obligation to repay if the recipient is ultimately found not to be entitled to indemnification. For all the rea-

---

105. Sun–Times Bylaws § 4.13. The defendants cursorily point out that the Bylaws only reference "indemnify" and thus this limitation does not apply to advancement. A fair reading of the Bylaws suggests that the term "indemnify" as it was used in § 4.13 encompasses advancement. *See, e.g., Sodano v. Am. Stock Exchange LLC*, 2008 WL 2738583, at *11 (Del.Ch. July 15, 2008).

106. Sun–Times Certificate Art. IX (b).

107. *See* 8 *Del. C.* § 109(b) ("The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.").

108. *See Zaman*, 2008 WL 2168397, at *34–36.

109. Boultbee Settlement Agreement ¶ 12.

110. Black Settlement Agreement ¶ 6.

sons discussed, in this context, reference to a proceeding most reasonably refers to all stages of the proceeding, until such time as a final disposition of that proceeding takes place. Indeed, the Boultbee Settlement Agreement makes this linkage plain by stating that the Sun–Times advancement obligation continues until it is ultimately determined that Boultbee is not entitled to indemnification.[111] Moreover, that the parties viewed appeals as encompassed by the reference to the trial court proceeding is evident in the Black Settlement Agreement's reference to the Sun–Times' "counterclaims against Mr. Black [in a prior action before this court] for the recoupment of amounts previously advanced in connection with *Hollinger International, Inc. v. Black,* C.A. No. 183–N (Court of Chancery) (the "Delaware Litigation")."[112] The counterclaims actually related to advancement for both work in the Court of Chancery and the Delaware Supreme Court appeal in that same action, which the Sun–Times repeatedly referred to together as the "Delaware Litigation."[113] Thus, it would be consistent for the Settlement Agreements to refer to the trial court action as encompassing the entire proceeding, including any appeals.

For the reasons explained above, the Sun–Times is contractually obligated to continue advancement to Boultbee and Black under their Settlement Agreements.

B. *The Other Counts In The Complaint*

I briefly address the remaining counts in the complaint. Counts Two seeks repayment or setoff of amounts advanced after sentencing. Judgment on that count is entered in favor of the defendants because the Sun–Times has an advancement obligation covering those expenses.

Counts Three and Four seek both a declaration and repayment or setoff of the amounts advanced to the defendants for the criminal counts on which they have been convicted. Those counts would involve making an ultimate determination that the defendants are not entitled to indemnification for the criminal counts while there is still the possibility that those convictions could be overturned. For all the reasons explained in this opinion, such an ultimate determination is not appropriate until there is a final, non-appealable conclusion to the proceeding.[114] Therefore, Counts Three and Four are dismissed.

Counts Five and Six seek both a declaration and repayment or setoff of the amounts advanced to the defendants for fees and expenses related to the defense of the criminal counts of which they were

---

**111.** Boultbee Settlement Agreement ¶ 12.

**112.** Black Settlement Agreement at 2.

**113.** *See supra* note 74.

**114.** *See supra* note 92; *see also Kaung v. Cole Nat'l Corp.,* 884 A.2d 500, 510 (Del.2005) ("[A]n advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment. The detailed analysis required of such claims is both premature and inconsistent with the purpose of a summary proceeding."); *Bergonzi,* 2003 WL 22407303, at *4 (dismissing without prejudice the company's counterclaim seeking recoupment of amounts previously advanced because "controversy regarding Bergonzi's right

to indemnification [had] not yet matured to a point where judicial action [was] appropriate") (internal quotation and citation omitted); *Dunlap v. Sunbeam Corp.,* 1999 WL 1261339, at *5 (Del.Ch. July 9, 1999) (holding that because § 145(c) mandatory indemnification if an official prevails on the merits or otherwise remains a possibility until the completion of the lawsuits, the "repayment of [advancement] would not be required *until after the completion of the lawsuits*—and then only if (a) Dunlap and Kersh do not prevail on the merits, and (b) the Sunbeam board votes not to authorize indemnification") (emphasis added).

acquitted to the extent those fees and expenses were not reasonable. Such a reasonableness determination would be complex because it would involve the allocation of fees and expenses between those incurred in connection with the criminal counts for which the defendants were convicted and those incurred in connection with the criminal counts for which the defendants were acquitted. Performing such an allocation analysis on a provisional basis could turn out to be waste of the parties' and the court's resources if the criminal convictions are overturned. If that happens, an allocation would be unnecessary. Given the efficiency concerns discussed throughout this opinion, Counts Five and Six are dismissed as not yet ripe.[115]

**115.** The defendants contend that this court does not have subject matter jurisdiction for Counts Five and Six as to Black and Boultbee because their Settlement Agreements (thankfully!) commit disputes over reasonableness to a special master. *See* Black Settlement Agreement ¶ 5; Boultbee Settlement Agreement ¶ 5. The Sun–Times counters that Counts Five and Six do not seek to have this court determine the reasonableness of the fees and expenses with respect to Black and Boultbee, only to enter a declaration and order that to the extent the special master determines the fees and expenses related to the defense of the criminal counts of which they were acquitted are not reasonable, the defendants are required to and must return any advancement for fees and expenses that are unreasonable. Those Counts are not ripe at this point and to the extent the Sun–Times seeks for this court to enter a declaration parroting the undisputed terms of the Settlement Agreements, it does not raise a justiciable dispute.

## V. *Conclusion*

For the foregoing reasons, the Sun–Times' motion for partial summary judgment is denied. Summary judgment is granted to the defendants on Counts One and Two. The defendants' motion to dismiss the remaining counts in the Sun–Times complaint is granted. Counts Three through Six are dismissed without prejudice.