# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PAUL A. RHODES, PH.D, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-1079-BWD |
| | ) | |
| BIOMERIEUX, INC., a Delaware corporation, SPECIFIC DIAGNOSTICS, LLC, a Delaware corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## FINAL REPORT

Final Report:  February 19, 2024
Date Submitted:  February 16, 2024

Rudolf Koch, Travis S. Hunter, and Nicole M. Henry, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Attorneys for Plaintiff Paul A. Rhodes*.

James M. Yoch, Jr. and Kevin P. Rickert, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Brian Massengill and Matthew C. Sostrin, MAYER BROWN LLP, Chicago, Illinois; *Attorneys for Defendants bioMérieux, Inc. and Specific Diagnostics, LLC*.

**DAVID, M.**

In May 2022, defendant bioMérieux, Inc. ("bMx") acquired Specific Diagnostics, Inc. ("Specific"), agreeing to "assume and honor" Specific's indemnification and advancement obligations to its directors and officers.

According to bMx and Specific Diagnostics, LLC ("Defendants"), soon after the merger closing, Defendants discovered that Specific was the subject of an ongoing government investigation under the False Claims Act. That investigation resolved in a monetary settlement. In July and August 2023, Defendants sent letters to plaintiff Paul A. Rhodes ("Plaintiff"), the former Chief Executive Officer and director of Specific, alleging that Plaintiff had breached representations and warranties in the merger agreement and committed fraud by failing to disclose the existence of the investigation prior to the merger.

In response, Plaintiff filed a lawsuit in Delaware Superior Court seeking, among other things, a declaration that Plaintiff did not commit fraud ("Plaintiff's Superior Court Action"). Defendants then filed a separate action in Delaware Superior Court asserting claims against Plaintiff for fraud, fraudulent inducement, fraudulent concealment, and unjust enrichment ("Defendants' Superior Court Action").

Plaintiff, seeking advancement of expenses incurred in both Plaintiff's Superior Court Action and Defendants' Superior Court Action, has moved for summary judgment on his entitlement to advancement and fees-on-fees. This final

1

report[1] grants that motion in part. Under the terms of the governing bylaws and indemnification agreement, Plaintiff is entitled to advancement of expenses incurred in connection with Defendants' Superior Court Action, which asserts claims against Plaintiff by reason of his corporate status. Plaintiff is not entitled to advancement of expenses incurred in connection with Plaintiff's Superior Court Action, which he preemptively filed without the approval of Specific's board of directors (the "Board"). Plaintiff is entitled to fees-on-fees proportionate to his success, as well as prejudgment interest.

## I.     BACKGROUND

The following facts are drawn from undisputed allegations in Plaintiff's Verified Complaint for Advancement (the "Complaint") and exhibits attached to the parties' briefing submitted in connection with Plaintiff's Motion for Summary Judgment (the "Motion").

---

[1] The parties have agreed to submit this action to me for a final decision pursuant to Court of Chancery Rule 144(h). *See* Ct. Ch. R. 144(h) ("Subject to the approval of the Court, the parties may agree to submit any case or proceeding or any claim or issue in a case or proceeding to a Magistrate in Chancery for a final decision that shall not be subject to further judicial review."); *see also* 10 *Del. C.* § 350 ("The parties in any matter may stipulate to a final adjudication of the matter by a Magistrate of the Court of Chancery. In such a stipulation, the parties shall consent that the decision of the Magistrate shall have the same effect as a decision of a member of the Court of Chancery. Appeals from decisions of the Magistrate in a matter governed by such a stipulation shall be determined in all respects by the same procedural and substantive standards as are applicable to appeals from decisions of members of the Court of Chancery.").

**A. bMx Acquires Specific And Assumes Specific's Advancement Obligations.**

Plaintiff Paul A. Rhodes is a co-founder and former director and Chief Executive Officer of Specific, a Delaware corporation. Verified Compl. For Advancement [hereinafter, "Compl."] ¶ 5, Dkt. 1. Prior to May 2022, Specific was a medical device company developing a rapid test to determine the most effective antibiotic to prescribe for blood infections. *Id.* ¶ 15.

Plaintiff is also a co-founder and the controller of non-party iSense, LLC ("iSense"). *Id.* ¶ 11. Prior to August 2021, iSense licensed patented intellectual property from the University of Illinois, which it then cross-licensed to Specific for use in Specific's products. *Id.* ¶ 40.

In December 2021, the United States Attorney's Office for the Northern District of California ("USAO") issued Civil Investigative Demands ("CIDs") to iSense and Specific as part of an investigation under the False Claims Act (the "Investigation"). Defs.' Ans. Br. In Opp'n To Mot. For Summ. J. [hereinafter, "AB"], Ex. 1 at 35, Dkt. 22. Plaintiff contends that the CIDs were issued in connection with an investigation of iSense only, while Defendants assert that the Investigation concerned both iSense and "related entities," such as Specific. During the Investigation, iSense and Specific entered into tolling agreements that, per Defendants, "confirm[ed] that the government was investigating claims 'against Specific.'" AB at 6 (citation omitted); AB, Ex. 1 at 64.

On April 11, 2022, Specific, bMx, and affiliated entities entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which bMx acquired Specific (the "Merger"). Compl., Ex. 3 [hereinafter, "Merger Agt."]. Under the Merger Agreement, bMx and its acquisition subsidiary[2] agreed to "assume and honor" Specific's indemnification and advancement obligations to its directors and officers.[3]

The Merger closed on May 18, 2022. Defendants contend that three months later, on August 31, 2022, they learned of the Investigation. AB at 8. On December 18, 2022, iSense, Specific, and Plaintiff entered into an agreement with the USAO to settle the Investigation for more than $10 million (the "Settlement"). Compl., Ex. 4 at 1.

---

[2] It appears that acquisition subsidiary—Intel Merger Sub 2, LLC, in the Merger Agreement—was later renamed Specific Diagnostics, LLC.

[3] *See* Merger Agt. § 5.4(a)

> Following the Closing, Acquiror and Merger Sub LLC agree to assume and honor all rights to indemnification, advancement of expenses and exculpation by the Acquired Companies now existing in favor of each Person who is now, or has been at any time prior to the date hereof or who becomes prior to the Effective Time an officer or director of the Company (each a "D&O Indemnified Party") as provided in the Acquired Companies' certificate of incorporation, bylaws or similar organizational documents, and any amendments thereto, or pursuant to any Contracts with D&O Indemnified Parties, without further action, at the Effective Time and shall survive the Merger and shall remain in full force and effect in accordance with their terms, and, in the event that any proceeding is pending or asserted or any claim made during such period, until the final disposition of such proceeding or claim.

On July 6, 2023, Defendants sent a letter to Plaintiff demanding that he reimburse Specific's share of the Settlement payment. *Id*. The letter asserted that Plaintiff "knew that Specific was a target of the [Investigation] since at least December 2021, yet failed to disclose the existence of the investigation to bMx until well after the May 18, 2022 closing of the bMx/Specific transaction." *Id*. The letter stated that "[t]he failure to disclose the existence of the government investigation render[ed] Specific's representations and warranties in the Merger Agreement knowingly false[,]" and that "bMx [wa]s prepared to seek relief for fraud in connection with the Merger Agreement in Delaware court." *Id*. at 1-2, 6.

On August 31, 2023, Defendants sent Plaintiff a second letter, expressing "disappoint[ment] that [Plaintiff] ha[d] refused to accept responsibility for his knowing breach of the Merger Agreement's representations and warranties concerning the government's False Claims Act investigation." Compl., Ex. 5 at 1. The letter attached a draft Verified Complaint asserting claims against Plaintiff for fraud, fraudulent inducement, and fraudulent concealment, to be filed in the Delaware Superior Court (the "Draft Complaint"). *Id*. at 5.

On September 14, 2023, Plaintiff sent a letter to Defendants pursuant to the Bylaws of Specific Diagnostics, Inc. (the "Bylaws"), demanding advancement for expenses incurred in connection with the Draft Complaint and enclosing an undertaking. Compl., Ex. 6 at 1, 4.

5

**B. Plaintiff Files An Action In Superior Court Seeking A Declaration That He Did Not Commit Fraud.**

On October 3, 2023, Plaintiff filed an action against bMx and Specific in the Delaware Superior Court, captioned *Paul A. Rhodes v. bioMérieux, Inc.*, C.A. No. N23C-10-014 SKR CCLD (Del. Super.).

In Plaintiff's Superior Court Action, Plaintiff "denies that he committed fraud against BMX, denies that Specific was the subject of a government investigation at the time [of the Merger], and denies that he knew Specific was the subject of a government investigation at the time the Merger Agreement was signed." Compl., C.A. No. N23C-10-014 SKR CCLD [hereinafter, "Pl.'s Compl."] ¶ 76, Dkt. 1. Plaintiff "seeks a declaration that he did not commit fraud, fraudulent inducement and fraudulent concealment through Specific's representation that Specific was not the subject of a government investigation." *Id*. at 77.[4]

---

[4] In Plaintiff's Superior Court Action, Plaintiff also alleges that he, Specific, and iSense entered into a joint defense agreement concerning the Investigation (the "JDA"). Pl.'s Compl. ¶ 9. According to Plaintiff, bMx sought to "curry favor with the government . . . by providing the government with misleading and incomplete documentation" in breach of the JDA, "which directly resulted in clear and direct financial and reputational damage to both iSense and [Plaintiff]." *Id*. ¶ 10. Based on those allegations, Plaintiff asserts claims for breach of the JDA against Specific and tortious interference with the JDA against bMx. *Id*. ¶¶ 86-99. Plaintiff further alleges that his contribution to the Settlement constitutes both a "Loss" and "Indemnifiable Damages" under the Merger Agreement and seeks indemnification from bMx and Specific for those amounts. *Id*. ¶ 48. Plaintiff does not seek advancement for these claims.

## C. Defendants File An Action In Superior Court Claiming Plaintiff Committed Fraud.

Six days later, on October 9, 2023, Defendants filed an action against Plaintiff and iSense in the Delaware Superior Court, captioned *bioMérieux, Inc. v. Paul A. Rhodes*, C.A. No. N23C-10-067 SKR CCLD (Del. Super.).

In Defendants' Superior Court Action, Defendants allege that Plaintiff knew Specific was "the subject[] of a government investigation under the False Claims Act" that "exposed Specific both to monetary liability and disbarment restricting Specific's ability to be awarded government contracts critical to its business[,]" and "concealed the investigation from bMx in the lead-up to the transaction." AB, Ex. 1 at 3 [hereinafter, "bMx Compl."] ¶ 5. Premised on those allegations and others, Defendants' Superior Court Action asserts claims against Plaintiff for fraud, fraudulent inducement, fraudulent concealment, and unjust enrichment. *Id*. ¶¶ 95-119.

Separately, Defendants allege that Plaintiff "willfully concealed and failed to disclose to bMx in the lead-up to the transaction" that in August 2021, the University of Illinois terminated iSense's license to patented intellectual property that iSense had cross-licensed to Specific. *Id*. ¶ 11. Immediately prior to the Merger, Plaintiff negotiated a separate license agreement between the University and Specific, but later "caused . . . iSense[] to file suit against the University of Illinois seeking to invalidate the very License Agreement that [Plaintiff] negotiated on Specific's

behalf and used to induce bMx to acquire Specific." *Id*. ¶ 13. Defendants assert a separate claim for fraudulent inducement based on those allegations.[5] *Id*. ¶¶ 127-134.

**D.** **Plaintiff Files This Advancement Action And bMx Adopts A Written Consent Purporting To Reject Plaintiff's Demand For Advancement.**

On October 25, 2023, Plaintiff initiated this advancement action. Dkt. 1. On November 8, 2023, the Court entered a Stipulation and Order Governing Briefing in Advance of Final Hearing, which stated that "[a] final hearing will proceed on a paper record without further discovery" and set a briefing schedule on Plaintiff's forthcoming Motion for Summary Judgment. Dkt. 11. ¶ 2.

On November 16, 2023, bMx, as the sole member of Specific Diagnostics, LLC, executed a written consent (the "Written Consent") resolving to:

> reject[] [Plaintiff]'s claim for advance of expenses, on the basis that, in a good faith determination and on the facts currently known, [Plaintiff], acting solely in his personal capacity or in his capacity as an executive officer of the Company Predecessor, was acting in bad faith and in a manner that [Plaintiff] did not believe to be in or not opposed to the best interests of the Company or otherwise contrary to the bylaws of the Company Predecessor.

---

[5] Defendants' Superior Court Action also brings claims against Plaintiff for breach of the implied covenant of good faith and fair dealing and tortious interference with a prospective business opportunity. However, after filing their Answering Brief, Defendants agreed to voluntarily dismiss those claims, and Plaintiff has, in turn, represented that "these claims are no longer ripe for advancement . . . ." RB at 4 n.3.

8

OB, Ex. E at 2.

On November 22, 2023, Plaintiff sent Defendants a second demand for advancement. In the November 22 letter, Plaintiff sought advancement pursuant to an Indemnification Agreement between Plaintiff and Specific dated August 26, 2019 (the "Indemnification Agreement"). OB, Ex. A. Defendants rejected that demand on November 29, 2023. OB, Ex. B.

On December 5, 2023, the Court entered an Amended Stipulation and Order Governing Briefing in Advance of Final Hearing.[6] Dkt. 16. The Court heard oral argument on the Motion on February 16, 2024. Dkt. 30.

### E.    Advancement Rights Under The Bylaws

Article XI, Section 44 of the Bylaws, entitled "Indemnification," provides indemnification and advancement rights for Specific's directors and officers. Compl., Ex. 1 [hereinafter, "Bylaws"] § 44. Section 44(a) grants broad indemnification rights "to the fullest extent not prohibited" by law. *Id*. § 44(a). Section 44(a) further provides, however, that Specific will not be required to indemnify any director or officer in connection with any proceeding initiated by such

---

[6] On December 11, 2023, Plaintiff filed the Motion and his Opening Brief in support thereof. Pl.'s Op. Br. In Supp. Of Mot. For Summ. J. [hereinafter, "OB"], Dkt. 18. On January 8, 2024, Defendants filed an Answering Brief in Opposition to Motion for Summary Judgment. Dkt. 22. On January 22, 2024, Plaintiff filed a Reply Brief in Further Support of Motion for Summary Judgment. Pl.'s Reply Br. In Further Supp. Of Mot. For Summ. J. [hereinafter, "RB"], Dkt. 25.

person unless indemnification is required by law or the proceeding was authorized by the Board:

> The corporation will indemnify its directors and executive officers (for the purposes of this Article, "executive officers" has the meaning defined in Rule 3b-7 promulgated under the 1934 Act) to the fullest extent not prohibited by the DGCL or any other applicable law; provided, however, that the corporation may modify the extent of such indemnification by individual contracts with its directors and executive officers; and, ***provided, further, that the corporation will not be required to indemnify any director or executive officer in connection with any proceeding (or part thereof) initiated by such person unless*** (i) such indemnification is expressly required to be made by law, (ii) ***the proceeding was authorized by the Board of Directors*** of the corporation, (iii) such indemnification is provided by the corporation, in its sole discretion, pursuant to the powers vested in the corporation under the DGCL or any other applicable law or (iv) such indemnification is required to be made under paragraph (d)[7] of this Section.

*Id*. (emphasis added). This report refers to the limitation on indemnification and advancement rights for proceedings initiated by a director or officer without Board approval—reflected in bold and italics above—as the "Carve-Out."

---

[7] Section 44(d) of the Bylaws states:

> Any right to indemnification or advances granted by this Section to a director or executive officer will be enforceable by or on behalf of the person holding such right in any court of competent jurisdiction if (i) the claim for indemnification or advances is denied, in whole or in part, or (ii) no disposition of such claim is made within 90 days of request therefor. The claimant in such enforcement action, will be entitled to be paid also the expense of prosecuting the claim.

Section 44(c) of the Bylaws affords mandatory advancement rights for a director or officer who is or is threatened to be made a party to a proceeding "by reason of the fact" that she is or was a director or officer, subject to delivering an undertaking:

> The corporation **will advance** to any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, **by reason of the fact that such person is or was a director or executive officer** of the corporation, or is or was serving at the request of the corporation as a director or executive officer of another corporation, partnership, joint venture, trust or other enterprise, prior to the final disposition of the proceeding, promptly following request therefor, all expenses incurred by any director or executive officer in connection with such proceeding, provided, however, that, if the DGCL requires, an advancement of expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such indemnitee, including, without limitation, service to an employee benefit plan) will be made only upon delivery to the corporation of an undertaking, by or on behalf of such indemnitee, to repay all amounts so advanced if it is ultimately determined by final judicial decision from which there is no further right to appeal that such indemnitee is not entitled to be indemnified for such expenses under this Section or otherwise.

*Id*. § 44(c) (emphasis added).

Section 44(c) further states, however, that "no advance will be made" to an officer if a determination is made as follows:

> Notwithstanding the foregoing, unless otherwise determined pursuant to paragraph (e) of this Section, no advance will be made by the corporation to an executive officer of the corporation (except by reason of the fact that such executive officer is or was a director of the corporation, in which event this paragraph will not apply) in any action, suit or proceeding, whether civil, criminal, administrative or

11

investigative, if a determination is reasonably and promptly made (i) by a majority vote of a quorum consisting of directors who were not parties to the proceeding, even if not a quorum, or (ii) by a committee of such directors designated by a majority of such directors, even though less than a quorum, or (iii) if there are no such directors, or such directors so direct, by independent legal counsel in a written opinion, that the facts known to the decision-making party at the time such determination is made demonstrate clearly and person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the corporation.

*Id*. § 44(c) (emphasis added).

## F.     Advancement Rights Under The Indemnification Agreement

The Indemnification Agreement provides additional indemnification and advancement rights. Compl., Ex. 2 [hereinafter, "Indemn. Agt."]. Section 5 of the Indemnification Agreement grants mandatory advancement rights:

Notwithstanding any other provision of this Agreement, the Company shall advance all Expenses incurred by or on behalf of Indemnitee in connection with any Proceeding[8] by reason of Indemnitee's Corporate

---

[8] The Indemnification Agreement defines a "Proceeding" broadly to include:

any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened or completed proceeding, whether brought by or in the right of the Company or otherwise and whether civil, criminal, administrative or investigative, in which Indemnitee was, is or will be involved as a party or otherwise, by reason of his or her Corporate Status, by reason of any action taken by him or of any inaction on his part while acting in his or her Corporate Status; in each case whether or not he is acting or serving in any such capacity at the time any liability or expense is incurred for which indemnification can be provided under this Agreement; including one pending on or before the date of this Agreement, but excluding one

Status[9] within thirty (30) days after the receipt by the Company of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. Such statement or statements shall reasonably evidence the Expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any Expenses advanced if it shall ultimately be determined that Indemnitee is not entitled to be indemnified against such Expenses. Any advances and undertakings to repay pursuant to this Section 5 shall be unsecured and interest free.

Indemn. Agt. § 5.

Similar to the Bylaws, Section 9(c) of the Indemnification Agreement includes a "Carve-Out" providing that Specific is not obligated to "make any indemnity" for any Proceeding initiated by Plaintiff unless the Board authorized the Proceeding prior to its initiation:

Notwithstanding any provision in this Agreement, the Company shall not be obligated under this Agreement to make any indemnity in connection with any claim made against Indemnitee: (c) in connection with any Proceeding (or any part of any Proceeding) initiated by Indemnitee, including any Proceeding (or any part of any Proceeding) initiated by Indemnitee against the Company or its directors, officers, employees or other indemnitees, unless (i) the Board authorized the Proceeding (or any part of any Proceeding) prior to its initiation, or (ii)

initiated by an Indemnitee pursuant to Section 7 of this Agreement to enforce his rights under this Agreement.

Indemn. Agt. § 13(f).

[9] The Indemnification Agreement defines "Corporate Status" to mean "the status of a person who is or was a director, officer, employee, agent or fiduciary of the Company or of any other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise that such person is or was serving at the express written request of the Company." *Id*. § 13(a).

13

the Company provides the indemnification, in its sole discretion, pursuant to the powers vested in the Company under applicable law.

*Id*. § 9(c).

## II.    ANALYSIS

Plaintiff seeks summary judgment on his claims for advancement and fees-on-fees.  Summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ct. Ch. R. 56(c).  Under Court of Chancery Rule 56, "[t]he movants have the initial burden of demonstrating the absence of a material factual dispute.  If the movants meet their burden, the burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial."  *Ogus v. SportTechie, Inc.*, 2023 WL 2746333, at \*9 (Del. Ch. Apr. 3, 2023) (footnote and internal quotation marks omitted).

"Summary judgment is an appropriate way to resolve advancement disputes because 'the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought.'"  *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co., LLC*, 853 A.2d 124, 126-27 (Del. Ch. 2004) (quoting *Weinstock v. Lazard Debt Recovery GP, LLC*, 2003 WL 21843254, at \*2 (Del. Ch. Aug. 1, 2003)).  "[I]n determining whether to award advancement[,]" the

Court will "look to the plain meaning of the advancement provision[s]" in the governing instruments. *Id*. at 127.

### A. Plaintiff's Entitlement to Advancement

Plaintiff seeks advancement under the Bylaws and the Indemnification Agreement for expenses incurred in connection with (1) Plaintiff's Superior Court Action[10] and (2) Defendants' Superior Court Action.

Defendants raise several arguments intended to defeat Plaintiff's entitlement to advancement. First, Defendants contend that Plaintiff is not entitled to advancement for Plaintiff's Superior Court Action because the Carve-Outs in both the Bylaws and the Indemnification Agreement eliminate the right to advancement for affirmatively filed actions that are not authorized by the Board. Next, they assert that Plaintiff is not entitled to advancement for Defendants' Superior Court Action because the claims in that action are not brought "by reason of" Plaintiff's corporate status. Defendants also argue that the Written Consent bars Plaintiff's claims for

---

[10] In briefing, Plaintiff seeks advancement for the "threatened proceedings," by which he means (1) the fraud litigation that bMx threatened to file in its July 6, 2023 and August 31, 2023 letters, including the Draft Complaint, and (2) the declaratory judgment claim in Plaintiff's Superior Court Action. At oral argument, Defendants' counsel clarified that Defendants do not contest Plaintiff's entitlement to advancement of expenses incurred solely in response to the July 6 and August 31 letters, but oppose advancement of expenses incurred in connection with Plaintiff's Superior Court Action, for reasons discussed below.

15

advancement. And, finally, Defendants contend that Plaintiff has not demonstrated that he has incurred an advanceable loss.

I address each of those arguments below.

### 1. Plaintiff Is Not Entitled To Advancement For Plaintiff's Superior Court Action.

Plaintiff seeks advancement for expenses incurred in connection with Plaintiff's Superior Court Action, in which Plaintiff seeks a declaration that he did not commit fraud. Defendants deny that Plaintiff is entitled to any advancement for Plaintiffs' Superior Court Action, pointing to Carve-Outs in the Bylaws and the Indemnification Agreement that eliminate Plaintiff's right to indemnification for any action initiated by Plaintiff without Board authorization.

Plaintiff raises two arguments in response. First, Plaintiff contends that the Carve-Outs in the Bylaws and the Indemnification Agreement apply only to ultimate indemnification, and not advancement. Second, Plaintiff argues that even if the Carve-Outs apply to advancement, they are nevertheless inapplicable because Plaintiff's Superior Court Action was initiated to defend against Defendants' prior threats of litigation.

### a. The Carve-Outs Apply To Advancement.

Plaintiff first contends that the Carve-Outs in the Bylaws and the Indemnification Agreement do not apply to advancement rights.

16

Section 44(a) of the Bylaws provides that "the corporation will not be required *to indemnify* any director or executive officer in connection with any proceeding (or part thereof) initiated by such person unless . . . the proceeding was authorized by the Board of Directors of the corporation." Bylaws § 44(a) (emphasis added). Section 9(c) of the Indemnification Agreement states that Specific "shall not be obligated under this Agreement to make *any indemnity*" in connection with a Proceeding initiated by Plaintiff unless the Board authorized the Proceeding prior to its initiation. Indemn. Agt. § 9(c) (emphasis added).

Plaintiff correctly observes that the right to advancement and the right to indemnification are separate rights,[11] and that Section 44(a) of the Bylaws and Section 9(c) of the Indemnification Agreement do not use the word "advancement." *See* Bylaws § 44(a); Indemn. Agt. § 9(a). Plaintiff asserts that "the parties plainly knew how [to] differentiate between indemnification and advancement," and, therefore, the Carve-Outs must apply only to ultimate indemnification, and not advancement. RB at 19.

---

[11] *See Senior Tour Players*, 853 A.2d at 128 ("This court has consistently held that advancement and indemnification, although obviously related, are 'distinct types of legal rights' and that the right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified." (citation and footnote omitted)).

"The question of whether 'indemnification' as used in an agreement encompasses both advancement and ultimate indemnification is not novel." *Sodano v. Am. Stock Exch. LLC*, 2008 WL 2738583, at \*11 (Del. Ch. July 15, 2008), *aff'd sub nom. Am. Stock Exch. LLC v. Fin. Indus. Regul. Auth., Inc.*, 970 A.2d 256 (Del. 2009). In *Greco v. Columbia/HCA Healthcare Corp.*, for example, then-Vice Chancellor Strine interpreted a fees-on-fees provision in a certificate of incorporation entitling an indemnitee to "costs and expenses incurred in connection with successfully establishing his or her right to indemnification" as granting fees-on-fees for advancement as well as ultimate indemnification. 1999 WL 1261446 (Del. Ch. Feb. 12, 1999). The Court observed that the certificate used the term "indemnification" broadly by, among other things, referring to "indemnification" in the title of subsections that addressed both advancement and ultimate indemnification. *Id*. at \*13.

Similarly, in *Weinstock v. Lazard Debt Recovery GP, LLC*, the Court held that language stating that "indemnification" "shall continue as to" former affiliates included the right to advancement as well as ultimate indemnification. 2003 WL 21843254 (Del. Ch. Aug. 8, 2003). The Court reasoned that "indemnification" there included both advancement and ultimate indemnification because the "entirety" of the governing provision "addresse[d] indemnification broadly and treat[ed] the right to receive payments of expenses in advance as a subsidiary component." *Id*. at \*4;

*see also id.* at \*5 (following *Greco*, where "the term indemnification in a certificate of incorporation had to be read to encompass the subsidiary concept of advancement because that was the evident and sensible intent of the drafters").[12]

Five years later, relying on *Greco* and *Weinstock*, the Court in *Sodano v. American Stock Exchange LLC*, found that language in a separation agreement requiring a company to "indemnify [the plaintiff] . . . to the fullest extent permitted by . . . [the company's] organizational documents" included a right to advancement. 2008 WL 2738583 (ellipsis in original). The Court reasoned that the governing document:

> use[d] "indemnification" both broadly to encompass both advancement and ultimate indemnification and narrowly to cover ultimate indemnification only. The broad uses of "indemnification" include[d] titling the article that grants both advancement and ultimate indemnification using only 'indemnification' . . . . That the language in the [relevant agreement] is a reference to the broad use of "indemnification" is clear from that language's reference to "indemnify to the fullest extent permitted by . . . the [company]'s organizational documents."

*Id*. at \*11 (citations and footnotes omitted).

---

[12] *See Weinstock*, 2003 WL 21843254, at \*5 (concluding that the "better understanding of [the section] . . . [wa]s that the drafters wanted to ensure that departure from current service did not deprive an Indemnified Party facing a covered proceeding from any of the rights set forth in [the section generally] including the right to advancement in the last sentence of [the previous subpart] . . . .").

Directly pertinent to the issue presented here, the *Sodano* Court also explained that language requiring the company to "indemnify" an indemnitee in connection with a proceeding initiated by such person only if the proceeding was authorized by the board applied not only to ultimate indemnification, but advancement as well:

> [T]he [company] intended to use "indemnify" broadly to limit both the advancement and ultimate indemnification rights of covered persons who initiate proceedings in the following subsection: "(g) Notwithstanding the foregoing, but subject to Article Fifth (j), the [company] shall be required to indemnify any person identified in Article Fifth (a) in connection with a proceeding (or part thereof) initiated by such person only if the initiation of such proceeding (or part thereof) by such person was authorized by the Board."

*Id.* at *11 n.64. Thereafter, in *Sun-Times Media Group, Inc. v. Black*, the Court again considered an argument that a carve-out for proceedings initiated by an indemnitee did not restrict advancement rights because "the Bylaws only reference[d] 'indemnify' and thus th[e] limitation d[id] not apply to advancement." 954 A.2d 380 (Del. Ch. 2008). In rejecting that argument, the Court explained that "[a] fair reading of the Bylaws suggests that the term 'indemnify' as it was used in § 4.13 encompasses advancement." *Id*. at 407 n.105.[13]

---

[13] *See also, e.g.*, *Hoffman v. First Wave BioPharma, Inc.*, 2023 WL 6295345, at *6 n.79 (Del. Ch. Sept. 27, 2023), *reargument denied*, (Del. Ch. 2023) ("At trial, the parties agreed Section 8(c) of the Indemnification Agreement exempts from advancement 'any Proceeding (or any part of any Proceeding) initiated by [the plaintiff], including any Proceeding . . . initiated by [the plaintiff] against the Company or its directors, officers,

Turning to the governing instruments here, I find that, as in *Sodano* and *Sun-Times*, references to "indemnification" in Section 44(a) of the Bylaws and "any indemnity" in Section 7(c) of the Indemnification Agreement unambiguously include advancement as well as ultimate indemnification. Section 44 of the Bylaws, entitled "Indemnification," addresses indemnification broadly and treats advancement rights as a subsidiary component of indemnification. *See* Bylaws § 44(a) (granting broad rights to "indemnif[ication] . . . to the fullest extent not prohibited by the DGCL," which rights unambiguously include the right to advancement); *Sodano*, 2008 WL 2738583, at *11. Similarly, Section 9(c) of the Indemnification Agreement is intentionally broad, eliminating Specific's obligations

employees or other indemnitees, unless' authorized by the Board."); *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1103 (Del. Ch. 2012) ("Section 3(b)(iv) provides a key exception to indemnification *and advancement*: 'Indemnitee shall receive no indemnification of Expenses . . . in connection with any Proceeding, or part thereof (including claims and permissive counterclaims) initiated by Indemnitee . . . unless the Proceeding (or part thereof) was authorized by [the company's] Board of Directors . . . .'" (ellipsis in original) (emphasis added)).

Plaintiff suggests that the Court's decision in *Baldwin v. New Wood Sources, LLC*, C.A. No. 2019-0019-JRS (Del. Ch. Sept. 16, 2019) (TRANSCRIPT), compels a different conclusion, but it does not. In *Baldwin*, the Court held that language requiring the plaintiff to exhaust other funding sources "[p]rior to seeking indemnification" did not apply to a request for advancement. In reaching that conclusion, the Court emphasized that "the parties knew how to, and did, distinguish between" indemnification and advancement in *the same section*. *See id*. at 9:12-17 ("[T]his is evidenced in the first sentence of that section, where the two concepts, indemnification and advancement, are both identified separately. The language with respect to exhaustion, however, refers only to indemnification."). In *Sodano*, *Sun-Times*, and here, by contrast, the specific section at issue did not contain separate references to advancement.

21

"to make *any indemnity*" if Plaintiff initiates a Proceeding unless the Board authorized the Proceeding, while other provisions in the agreement carefully differentiate between rights to ultimate indemnification and advancement.[14] As a result, I conclude that the Carve-Outs in both the Bylaws and the Indemnification Agreement eliminate the right to advancement for a proceeding initiated by Plaintiff without Board approval.

### b. The Carve-Outs Foreclose Advancement Even If Plaintiff's Superior Court Action Was Filed Defensively.

Plaintiff next argues that "even if Section 44(a) of the Bylaws and Section 9(c) of the Indemnification Agreement applied [to advancement] . . . [Plaintiff] would still be entitled to advancement because the 'proceedings' at issue were initiated by Defendants, not Plaintiff." RB at 20. According to Plaintiff, because

---

[14] *Compare* Indemn. Agt. § 9(c) ("any indemnity") *with id*. § 7(a)

> In the event that (i) a determination is made pursuant to Section 6 of this Agreement that Indemnitee is not entitled to *indemnification* under this Agreement, (ii) *advancement* of Expenses is not timely made pursuant to Section 5 of this Agreement, (iii) no determination of entitlement to *indemnification* is made pursuant to Section 6(b) of this Agreement within ninety (90) days after receipt by the Company of the request for *indemnification*, (iv) payment of *indemnification* is not made pursuant to this Agreement within ten (10) days after receipt by the Company of a written request therefor, or (v) payment of *indemnification* is not made within ten (10) days after a determination has been made that Indemnitee is entitled to *indemnification* or such determination is deemed to have been made pursuant to Section 6 of this Agreement, Indemnitee shall be entitled to an adjudication in an appropriate court . . . .

(emphasis added).

Defendants threatened to sue him in July and August 2023, Plaintiff "had every right to defend himself thereafter." RB at 20-21.

Based on the plain language of the Carve-Outs, I find Plaintiff is not entitled to advancement for an action he filed without Board approval, even if he did so "defensively."

Plaintiff's argument is grounded in authority broadly interpreting the phrase "in defending" under Section 145(e) to include not only a defense of claims asserted against the indemnitee, but also the affirmative filing of a counterclaim or appeal by the indemnitee.[15] According to Plaintiff, that authority supports his view that Plaintiff's Superior Court Action is "not a 'proceeding' initiated by" Plaintiff, but, rather, a "defen[se] against bMx's previously threatened proceedings." RB at 21.

---

[15] *See* 8 *Del. C.* § 145(e)

> Expenses (including attorneys' fees) incurred by an officer or director of the corporation *in defending* any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section.

(emphasis added). *See, e.g.*, *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1055 (Del. Ch. 2014) ("[A] counterclaim will be considered to be 'defending' and thus advanceable, if it is: (1) 'necessarily part of the same dispute,' in the sense that it qualifies as a compulsory counterclaim under the prevailing Delaware and federal procedural standard, and (2) 'advanced to defeat, or offset' the affirmative claims." (citation omitted)); *Sun-Times*, 954 A.2d at 398 ("[A]n appeal of a conviction is defending, in the sense of § 145(e)'s use of defending a proceeding.").

Defendants dispute that characterization, urging that an "affirmatively filed, preemptive declaratory judgment action," even if filed in response to another proceeding, is *not* "'defensive'" in nature. *Baker v. Impact Hldg., Inc.*, 2010 WL 2979050, at *6 n.33 (Del. Ch. July 30, 2010); *see id.* at *6 (declining to interpret the plaintiff's advancement rights "so broadly as to turn what amounts to a preemptive attack into a defense" where plaintiff responded to a financial audit and investigation by filing three lawsuits against the company).

As in any advancement case, the Court must focus on the language of the governing instruments—here, the Bylaws and the Indemnification Agreement—to determine Plaintiff's entitlement to advancement for affirmatively filed actions. Notably, Plaintiff's advancement rights under the Bylaws and the Indemnification Agreement are not limited to expenses incurred "in defending" a proceeding. Authority interpreting the "in defending" requirement is, therefore, inapposite. Instead, the Bylaws and the Indemnification Agreement begin with a mandate to advance expenses incurred "in connection with such proceeding"[16]—a broader starting point than the "in defending" standard—but then, through the Carve-Outs, eliminate the right to advancement for proceedings initiated by Plaintiff unless authorized by the Board. *See* Bylaws § 44(a) ("*provided, further*, that the

---

[16] *See* Bylaws § 44(c).

24

corporation will not be required to indemnify . . ." (emphasis added)); Indemn. Agt. § 9 ("*Notwithstanding any provision in this Agreement*, the Company shall not be obligated . . ." (emphasis added)). Because the Carve-Outs unambiguously eliminate advancement rights for proceedings initiated by Plaintiff, regardless of whether Plaintiff initiated those proceedings in response to Defendants' threats of litigation, Plaintiff is not entitled to advancement for Plaintiff's Superior Court Action.

In what might be considered overreaching, Defendants attempt to push this conclusion one step further, arguing that the Carve-Outs also preclude advancement for Defendants' Superior Court Action, because that action was brought "in connection with" Plaintiff's Superior Court Action. AB at 16. Neither Section 44(a) of the Bylaws nor Section 9(c) of the Indemnification Agreement can reasonably be read to preclude advancement of fees incurred in Defendants' Superior Court Action. Though Defendants cite authority for the general proposition that the phrase "in connection with" must be read broadly,[17] they identify no cases in which this Court has denied advancement of expenses in an action filed against the plaintiff solely because the plaintiff filed her own action first. That is not surprising, because it

_____

[17] *See* AB at 18 (first citing *Lillis v. AT&T Corp.*, 904 A.2d 325, 332-33 (Del. Ch. 2006); then quoting *Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 2023 WL 4571932, at *13 (Del. Ch. July 17, 2023); then quoting *Seritage Growth Props., L.P. v. Endurance Am. Ins. Co.*, 2022 WL 18046813, at *6 (Del. Super. Ct. Dec. 19, 2022); and then quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001)).

would be inequitable, and "inconsistent with the core public policy underlying Section 145," to deny a claimed right to advancement based solely on the sequence of the parties' competing actions. *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 400 (Del. Ch. 2009).

In sum, the Carve-Outs preclude advancement of expenses incurred in connection with Plaintiff's Superior Court Action. They do not preclude advancement of expenses incurred in connection with Defendants' Superior Court Action.

### 2. Plaintiff Is Entitled To Advancement For Defendants' Superior Court Action.

Defendants also contend that Plaintiff is not entitled to advancement in connection with Defendants' Superior Court Action because the claims raised in that action are not brought "by reason of the fact" that Plaintiff is or was a director or officer of Specific. I disagree.

Section 44(c) of the Bylaws provides that "[t]he corporation will advance to any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, *by reason of the fact* that such person is or was a director or executive officer of the corporation . . . ." Bylaws § 44(c) (emphasis added). Similarly, Section 5 of the Indemnification Agreement provides that "the Company shall advance all Expenses incurred by or on behalf of Indemnitee in

26

connection with any Proceeding *by reason of* Indemnitee's Corporate Status . . . ." Indemn. Agt. § 5 (emphasis added).

The "by reason of" language in the Bylaws and the Indemnification Agreement tracks language in Section 145. "A proceeding is 'by reason of the fact that' a person is a director 'when "a nexus or causal connection" exists between the underlying proceeding and the official's "corporate capacity."'" *Kerbs v. Bioness Inc.*, 2022 WL 3347993, at *3 (Del. Ch. Aug. 15, 2022) (quoting *Krauss v. 180 Life Scis. Corp.*, 2022 WL 665323, at *4 (Del. Ch. Mar. 7, 2022)). "Our courts interpret that standard broadly in favor of advancement . . . ." *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *8 (Del. Ch. May 28, 2015). "[I]f there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct." *Danenberg v. Fitracks, Inc.*, 2012 WL 11220, at *5 (Del. Ch. Jan. 3, 2012) (alteration and ellipsis in original) (quoting *Homestore, Inc. v. Tafeen*, 888 A.2d at 204, 2143 (Del. 2005)).

Defendants' Superior Court Action asserts claims against Plaintiff for fraud, fraudulent inducement, fraudulent concealment, and unjust enrichment. In this action, Defendants say that Plaintiff "made no use of Specific's corporate machinery as an officer or director" to commit the fraud, and, instead, "acted in his personal

capacity to remain silent through and after the sale." AB at 22. That argument does not square with the theory advanced in Defendants' Superior Court Action. Defendants' fraud claims are premised on allegations that Plaintiff "willfully caused Specific to make . . . false representations to induce bMx to" enter into the Merger Agreement. bMx Compl. ¶ 1. Defendants allege that, "[a]s part of the due diligence process, bMx and its outside counsel submitted customary due diligence requests to Specific," and Plaintiff prepared responses that "willfully concealed and failed to disclose" material information. *Id*. ¶¶ 45-46.[18] In other words, Plaintiff, acting as

---

[18] *See also id*. ¶¶ 51-52

> On March 1 and 2, 2022, bMx and its counsel visited Specific's headquarters for in-person diligence meetings. In the legal due diligence meeting with Specific's management, the Chief Financial Officer and other members of the management team indicated multiple times that only Rhodes would have the appropriate information to answer certain questions. Rhodes attended the second half of the legal due diligence meeting on March 2, 2022. At that time, with Rhodes present, bMx again inquired as to whether there was any pending or threatened litigation involving Specific. Rhodes again willfully concealed and failed to disclose the existence of the False Claims Act investigation, CIDs, and tolling agreements.

*See also id.* ¶¶ 54-55

> bMx's diligence requests also covered iSense's license for the patented intellectual property with the University of Illinois and Specific's cross-license from iSense. . . . Instead of disclosing that the University of Illinois had terminated iSense's (and thus Specific's) license in 2021, Specific responded: "We will make the request for documentation from the University." Specific's response was highly misleading and designed to deceive bMx. Rhodes knew that the University had terminated iSense's (and thus Specific's) license in 2021 and that no documentation could ever confirm that "this agreement is still exclusive."

Specific's CEO, caused the company to mispresent information in diligence. Defendants further allege that Plaintiff "negotiated Specific's License Agreement with the University . . . to induce bMx to acquire Specific" and "signed the Merger Agreement on Specific's behalf . . . know[ing] that the representations in Sections 2.11, 2.13, and 2.34(d) were false"—actions that, again, allegedly were taken in Plaintiff's capacity as an officer of Specific. *Id.* ¶¶ 4, 65-66.

In this action, Defendants also argue that Plaintiff "is being sued in his personal capacity for a fraud he committed based on information he learned in his individual capacity." AB at 22. They contend Plaintiff "did not learn of the investigation because he was a director or officer of Specific," but instead "learned of the investigation because he and his controlled entity, iSense, were subjects of the investigation." AB at 21. Again, that is not what Defendants' Superior Court Action alleges. Rather, Defendants allege that CIDs were issued to both iSense *and* Specific;[19] Plaintiff retained counsel to represent Specific in the Investigation;[20] and "[c]ounsel representing Specific in the investigation . . . advised [Plaintiff] that

---

[19] bMx Compl. ¶ 31 ("On December 1, 2021, the [USAO] issued Civil Investigative Demands ('CID') to both iSense and Specific concerning a False Claims Act investigation involving the companies . . . .").

[20] *Id.* ¶ 34.

29

Specific was a subject of the investigation and that Specific should disclose the investigation to bMx, but [Plaintiff] still failed to do so."[21]

In short, there is a clear nexus between the claims alleged in Defendants' Superior Court Action and Plaintiff's official corporate capacity. To avoid liability in Defendants' Superior Court Action, "Plaintiff[] will be required 'to defend [his] actions as [an] officer[] and director[] of the Company' and possibly disprove allegations that [he] acted improperly in those capacities . . . ." *See Nielsen v. EBTH Inc.*, 2019 WL 4755865, at *10 (Del. Ch. Sept. 30, 2019).[22] The claims raised in Defendants' Superior Court Action are brought by reason of Plaintiff's corporate

---

[21] *Id.* ¶ 5.

[22] *Nielson*, 2019 WL 4755865, at *8 (explaining that the "by reason of" standard "includes all actions brought against an officer or director for wrongdoing that he committed in his official capacity, and for all misconduct that allegedly occurred in the course of performing his day-to-day managerial duties"; finding claims that plaintiffs "collectively and fraudulently induced [a purchaser] to purchase [company] stock" were brought by reason of plaintiffs' corporate capacities (citation omitted)); *see also Carr v. Glob. Payments Inc.*, 2019 WL 6726214, at *6 (Del. Ch. Dec. 11, 2019) ("the alleged fraud . . . warrant[s] advancement because [the claims] involve [plaintiff's] actions as Heartland's CEO"), *aff'd*, 227 A.3d 555 (Del. 2020); *Davis v. EMSI Hldg. Co.*, 2017 WL 1732386, at *10 (Del. Ch. May 3, 2017) (concluding claims were brought by reason of the plaintiffs' corporate status where "[t]he allegations in the underlying action against Plaintiffs [we]re that they misused their positions as officers and directors of the Company in order to engage in a widespread fraud that involved the manipulation of the Company's business model and related financial reports for the purpose of facilitating a sale of the Company at an exaggerated price"); *Hyatt v. Al Jazeera Am. Hldgs. II, LLC*, 2016 WL 1301743, at *10 (Del. Ch. Mar. 31, 2016) (concluding claims were brought by reason of directors' and officers' corporate status where the underlying action, which alleged false representations in a merger agreement, "create[d] a significant likelihood that [the plaintiffs] w[ould] be forced to defend actions that they took as officers and directors").

30

status, and Plaintiff is entitled to advancement of expenses as he defends against those claims.

### 3. The Written Consent Does Not Bar Advancement.

Defendants also contend that the Written Consent bars Plaintiff's claim for advancement.

Section 44(c) of the Bylaws provides that "no advance will be made . . . if a determination is reasonably and promptly made":

> (i) by a majority vote of a quorum consisting of directors who were not parties to the proceeding, even if not a quorum, or
>
> (ii) by a committee of such directors designated by a majority of such directors, even though less than a quorum, or
>
> (iii) if there are no such directors, or such directors so direct, by independent legal counsel in a written opinion,
>
>> that the facts known to the decision-making party at the time such determination is made demonstrate clearly and person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the corporation.

*Id*. § 44(c) (emphasis added).

On November 16, 2023, bMx, as the sole member of Specific, executed the Written Consent, resolving to:

> reject[] [Plaintiff]'s claim for advance of expenses, on the basis that, in a good faith determination and on the facts currently known, [Plaintiff], acting solely in his personal capacity or in his capacity as an executive officer of the Company Predecessor, was acting in bad faith and in a manner that [Plaintiff] did not believe to be in or not opposed to the

31

best of interests of the Company or otherwise contrary to the bylaws of the Company Predecessor.

OB, Ex. E.

The Written Consent does not bar advancement under Section 44(c) because none of subsections (i), (ii), or (iii) are satisfied. The Written Consent was not executed "by a majority vote of a quorum consisting of directors who were not parties to the proceeding"—it was executed by bMx, a party to Defendants' Superior Court Action. *See* Bylaws § 44(c)(i). Nor was the Written Consent executed "by a committee of such directors designated by a majority of such directors," or by independent legal counsel. *See id.* § 44(c)(ii), (iii).

Even if the Written Consent barred advancement under the Bylaws (it does not), the Indemnification Agreement "provide[s] for a separate, exclusive right to advancement—one that does not conflict with and is not limited by the" Bylaws. *Krauss*, 2022 WL 665323, at *7. *See also* Bylaws § 44(e) ("The rights conferred on any person by this Section are not exclusive of any other right that such person may have or hereafter acquire under any . . . agreement . . . ."). The Indemnification Agreement does not include an analog to Section 44(c). The Written Consent, therefore, does not bar Plaintiff's claim for advancement under the Indemnification Agreement.

#### 4. Plaintiff Has Incurred An Advanceable Loss.

As one final hurdle, Defendants argue that even if Plaintiff otherwise would be entitled to advancement, there exists a genuine issue of material fact concerning whether Plaintiff has incurred an out-of-pocket loss. Quoting *Levy v. HLI Operating Co.*, Defendants explain that "[o]nce a co-indemnitor fully reimburses its indemnitee for indemnifiable liabilities, the indemnitee lacks standing to assert an indemnification claim against the other indemnitor in the indemnitee's own right." AB at 27 (quoting *Levy v. HLI Operating Co.*, 924 A.2d 210, 222 (Del. Ch. 2007)). Defendants speculate that if "iSense or another party is contractually obligated to pay [Plaintiff]'s expenses, no loss has occurred and [Plaintiff]'s claim for advancement should be dismissed." *Id.* at 28.

The record reflects that iSense has not paid Plaintiff's expenses. *See* Decl. Of Paul A. Rhodes, PH.D In Supp. Of Reply Br. In Further Supp. Of Motion For Summ. J. ¶¶ 2-3, Dkt. 26 ("I have been paying for my legal fees and expenses for the threatened proceedings, declaratory judgment claim, the Superior Court Action, and the above-captioned action . . . . To date, iSense, LLC has not paid for any of my Legal Fees and Expenses.").

Even if it had, that would not foreclose advancement. In *DeLucca v. KKAT Management, L.L.C.*, 2006 WL 224058 (Del. Ch. Jan. 23, 2006), then-Vice Chancellor Strine rejected a similar argument. There, a company seeking to avoid

33

its advancement obligations argued that because the plaintiff had caused a company she owned to bear her expenses, she had suffered no loss. The Court explained:

> [T]o embrace the . . . Companies' argument would provide a perverse incentive. If a person owed advancement rights could find an affluent aunt, best friend, or other third party to front her defense costs, she would thereby forfeit her right to seek recompense from the party that should have been advancing those costs on the grounds that she was not "out of pocket" herself even though she was obliged to repay her benefactor. That would be inequitable and reward the refusal to honor promises of advancement. The incentives for such refusal are already abundant, as the *Tafeen* line of cases well illustrates, and there is no legal or equitable justification for adding to them by embracing the . . . Companies' present argument. To do so would encourage indemnitors to use the leverage of a denial of advancement to deprive indemnitees of appropriate legal advice, putting them under pressure to settle disputes not because of the merits, but because of doubts about whether they could obtain competent defense counsel.

*Id*. at *8.

As Defendants' Superior Court Action alleges, Plaintiff owns iSense. Even if that company were bearing Plaintiff's costs—and, again, the record shows it is not— Plaintiff nevertheless would be "suffering the economic costs" of Defendants' refusal to honor their advancement obligations. *Id.*[23]

---

[23] In briefing, Defendants also suggest that "Delaware's fundamental policy against rewarding fraudsters demand[s] that [Plaintiff] not receive [advancement]." AB at 31. At this stage, the Court cannot assess the merits of Defendants' fraud claims or Plaintiff's defenses to those claims. On the other hand, as the Delaware Supreme Court has explained, "[t]he broader salient benefits that the public policy behind section 145 seeks to accomplish for Delaware corporations will only be achieved if the promissory terms of advancement contracts are enforced by courts even when corporate officials . . . are accused of serious misconduct." *Homestore, Inc*., 888 A.2d at 218.

34

## B.    Procedures

The parties agree that to the extent the Court orders advancement, it should implement procedures to determine the advanceable amounts.  This Court routinely orders parties in advancement proceedings to follow the procedures set out in *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012).[24]

> Under the *Fitracks* Procedures, the senior Delaware counsel for the party seeking advancements oversees the preparation of a detailed submission supporting the advancement request and certifies that the amounts sought fall within the scope of the advancement right.  If the responding party objects, the senior Delaware counsel for the responding party oversees the preparation of a similarly detailed set of objections and certifies that those amounts fall outside the scope of the advancement right.  After the exchange of written materials, the senior Delaware lawyers confer in good faith in an effort to resolve disputes without court involvement.

*White v. Curo Texas Hldgs., LLC*, 2017 WL 1369332, at *1 (Del. Ch. Feb. 21, 2017). The order implementing this report shall include procedures consistent with *Fitracks*.

## C.    Fees-on-Fees

Both the Bylaws and the Indemnification Agreement entitle Plaintiff to an award of fees for his expenses in litigating this action.  Bylaws § 44(d); Indemn. Agt.

---

[24] *See, e.g.*, *Krauss*, 2022 WL 665323, at *5 (directing parties to submit a form of *Fitracks* order); *Carr*, 2019 WL 6726214, at *9 (same); *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *14 (Del. Ch. Feb. 13, 2018) (same); *Narayanan v. Sutherland Glob. Hldgs. Inc.*, 2016 WL 3682617, at *15 (Del. Ch. July 5, 2016) (same).

§ 7(d). The parties agree that fees-on-fees are "appropriate 'to the extent [Plaintiff] prevail[s] in [his] claim to enforce a contractual right to advancement.'" AB at 30 (quoting *Imbert v. LCM Interest Hldg., LLC*, 2013 WL 1934563, at *11 (Del. Ch. May 7, 2013)); *see also* RB at 30. Therefore, Plaintiff is owed fees-on-fees proportionate to his success, as set forth above. *See Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397 ("[P]laintiffs who are only partially successful will receive fees on fees reflecting the extent of their success . . . ."); *see also Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at *10 (Del. Ch. May 29, 2014) (awarding fees-on-fees proportionate to the plaintiff's success).

Defendants also owe Plaintiff prejudgment interest. *See Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) ("[P]re-judgment interest is awarded as a matter of right."). Pre-judgment interest is awarded "for the period of time when [Defendants] unjustifiably refused to provide advancement." *See Krauss*, 2022 WL 665323, at *10 (citing *Citrin v. Int'l Airport Ctrs. LLC*, 992 A.2d 1164, 1167 (Del. Ch. 2006).

## III. CONCLUSION

Summary judgment is entered for Plaintiff in part, as set forth above. Defendants must advance to Plaintiff his reasonable expenses incurred in connection with Defendants' Superior Court Action. The parties are directed to meet-and-

36

confer and submit a proposed form of implementing order, to include *Fitracks* procedures, within ten days.